UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **Grupo Simec S.A.B. de C.V.; Aceros Especiales Simec Tlaxcala, S.A. de C.V.; Compania Siderurgica del Pacifico S.A. de C.V.; Fundiciones de Acero Estructurales, S.A. de C.V.; Grupo Chant S.A.P.I. de C.V.; Operadora de Perfiles Sigosa, S.A. de C.V.; Orge S.A. de C.V.; Perfiles Comerciales Sigosa, S.A. de C.V.; RRLC S.A.P.I. de C.V.; Siderúrgicos Noroeste, S.A. de C.V.; Siderurgica del Occidente y Pacifico S.A. de C.V.; Simec International 6 S.A. de C.V.; Simec International, S.A. de C.V.; Simec International 7 S.A. de C.V.; and Simec International 9 S.A. de C.V.**<br><br>**Plaintiff,**<br><br>v.<br><br>**UNITED STATES,**<br><br>**Defendant.** | **COMPLAINT**<br><br>**Court No. 22-cv-00202** |

## COMPLAINT

Plaintiff Grupo Simec S.A.B. de C.V.; Aceros Especiales Simec Tlaxcala, S.A. de C.V.; Compania Siderurgica del Pacifico S.A. de C.V.; Fundiciones de Acero Estructurales, S.A. de C.V.; Grupo Chant S.A.P.I. de C.V.; Operadora de Perfiles Sigosa, S.A. de C.V.; Orge S.A. de C.V.; Perfiles Comerciales Sigosa, S.A. de C.V.; RRLC S.A.P.I. de C.V.; Siderúrgicos Noroeste, S.A. de C.V.; Siderurgica del Occidente y Pacifico S.A. de C.V.; Simec International 6 S.A. de C.V.; Simec International, S.A. de C.V.; Simec International 7 S.A. de C.V.; and Simec International 9 S.A. de C.V. (collectively, "Simec"), by and through its attorneys, alleges and states the following claims against the United States.

1

1. Simec seeks judicial review of the Final Results of the Administrative Review by the U.S. Department of Commerce ("Commerce") of its antidumping duty order on steel concrete reinforcing bar ("rebar") from Mexico for the November 1, 2019 through October 31, 2020 Period of Review ("Final Results"). The Final Results were published in the Federal Register on June 8, 2022. *See Steel Concrete Reinforcing Bar from Mexico*: *Final Results of Antidumping Duty Administrative Review; 2019-2020*, 87 Fed. Reg. 34848 (Dep't. Commerce, June 8, 2022).

## JURISDICTION

2. Simec brings this action pursuant to section 516A(a)(2)(i)(1) of the Tariff Act of 1930, as amended (the "Tariff Act"), 19 U.S.C. § 1516a(a)(2)(A)(i)(I), to examine a periodic review determination by Commerce as described in section 516A(a)(2)(B)(iii) of the Tariff Act, 19 U.S.C. § 1516a(a)(2)(B)(iii). This Court has exclusive subject-matter jurisdiction of this matter by reason of 28 U.S.C. § 1581(c).

3. The Final Results constitute a determination involving a free trade area country (Mexico) under 19 U.S.C. § 1516a(f)(9)(B) and 19 U.S.C. § 1516a(g)(1)(B). Simec has not been timely notified of any request for a review of this determination by a binational panel under 19 U.S.C. 1516a(g)(2).

## STANDING

4. Simec is a manufacturer, producer and exporter of rebar from Mexico, the subject merchandise at issue in this action. Therefore, Simec is an "interested party" within the meaning of Section 771(9)(A) of the Tariff Act, 19 U.S.C. § 1677(9)(A).

5. Simec participated in the underlying proceeding giving rise to this action as a mandatory respondent and, therefore, is a "party to the proceeding in connection with which the matter arises" under 19 U.S.C. § 1516a(a)(2)(A).

6. As an interested party who was a party to the underlying proceeding, Simec has standing to commence this action pursuant to section 516A(d) of the Tariff Act and 28 U.S.C. § 2631(c) and (k)(1).

## TIMELINESS OF ACTION

7. Commerce published notice of the Final Results in the Federal Register on June 8, 2022.

8. Simec commenced this action by filing a Summons in this Court on July 11, 2022, thirty-three days after the date of publication of the Final Results. Because this matter involves a free trade area country, the time limits set forth in 19 U.S.C. § 1516a(a)(2)(A) do not begin to run until the thirty-first day after the date on which the Final Results were published in the Federal Register. *See* 19 U.S.C. § 1516a(a)(5)(A); 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and 19 U.S.C. § 1516a(a)(2)(B)(iii). Accordingly, the Summons was timely filed between the thirty-first and sixtieth day after the Final Results were published in the Federal Register.

9. Simec is filing this Complaint within 30 days after it filed the Summons. This Complaint is therefore timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A) and Rules 3(a)(2) and 6(a) of this Court.

## STATEMENT OF FACTS

10. On November 6, 2014, Commerce published an antidumping duty (AD) order on steel concrete reinforcing bar (rebar) from Mexico in the Federal Register. *See Steel Concrete Reinforcing Bar from Mexico: Antidumping Duty Order*, 79 FR 65925 (Dep't of Commerce Nov. 6, 2014) ("AD Order").

11. On November 3, 2020, Commerce published a notice of opportunity to request an administrative review of the AD Order for the period of review running from November 1, 2019,

through October 31, 2020. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 85 FR 69586 (Dep't of Commerce Nov. 3, 2020).

12. On November 30, 2020, Commerce received requests for administrative review from Petitioners in the investigation (requesting that Commerce conduct an administrative review of 17 entities) as well as Deacero S.A.P.I. de C.V. ("Deacero"), Sidertul, S.A. de C.V., Grupo Acerero, S.A. de C.V. and Simec.

13. On January 17, 2021, Commerce published a notice of initiation of the administrative review. *See Initiation of Antidumping Duty and Countervailing Duty Administrative Reviews*, 85 FR 3014 (Dep't of Commerce Jan. 17, 2021) ("Initiation Notice").

14. On February 8, 2021, Commerce selected Deacero and Simec as mandatory respondents in the administrative review, collapsing all of the Simec entities named as Plaintiffs in this Complaint into a single group, "Grupo Simec," as it had done in prior administrative reviews.

15. Commerce also issued Initial Questionnaire to Simec and Deacero on February 8, 2021.

16. The 15 collapsed entities that comprise Simec do not have common accounting or management software. They are divided into five separate and geographically dispersed operating units, each with different management and accounting systems and software. Simec thus needed to prepare more than five separate responses to Commerce's Initial Questionnaire and then integrate, reconcile and collapse those responses into a single Questionnaire Response, per Commerce methodology. The foregoing logistical challenges drastically increased the work and coordination needed to respond to the Initial Questionnaire.

17. Simec's difficulty in responding to the Questionnaire was further exacerbated by COVID-19 travel restrictions, which precluded travel between Simec's geographically dispersed companies to review voluminous on-site records, manually compile data and coordinate a single response to the Initial Questionnaire.

18. Simec lost three accountants on its antidumping response team to death from COVID-19. These accountants were central to both the Questionnaire response process and Simec's operations generally. The loss of these three accountants was devastating to Simec's ability to respond to the detailed and complex Questionnaire submitted by Commerce. Simec had to find new individuals to fill these gaps who then had to learn antidumping law, company protocols and company records. This issue was further aggravated by the fact that the global COVID-19 pandemic health crisis greatly impaired Simec's ability to hire new people.

19. Simec made Commerce aware of the above-described challenges and, after receiving from Commerce brief extensions of time to respond to the Initial Questionnaire, timely submitted responses to that Questionnaire.

20. On July 27, 2021 and August 4, 2021—roughly five months after Commerce issued the Initial Questionnaire to Simec—Commerce issued an extensive Supplemental Questionnaire to Simec.

21. The Supplemental Questionnaire included 275 questions stretched across twenty-nine single space pages, many of which requested production of extensive supporting documents.

22. Simec continued to face a number of challenges in responding to the Supplemental Questionnaire. Simec communicated these challenges to Commerce in requests for extensions on August 9, 20, 30, 31 and September 1 and 2, 2021.

23. Commerce only partially granted these requests, giving Simec brief extensions of time to respond to the Supplemental Questionnaire up to September 7, 2021 but then indicated in a September 3, 2021 letter that it would be unlikely to grant any further extensions. Thus, even with the brief extensions granted by Commerce, Simec had slightly over one month to respond to the 275 supplemental questions presented by Commerce and to provide extensive supporting documentation for same.

24. On September 6, 2021, Simec filed a letter with Commerce indicating that it intended to timely file its responses to Commerce's Supplemental Section A to C Questionnaire and Commerce's Section A/D Supplemental Questionnaire. Simec also informed Commerce, however, that because Commerce had previously advised Simec that it would not grant any further extensions, Simec's responses would be based on the information that Simec had been able to collect by that point. Simec's letter then requested an additional two weeks to respond to (a) Questions 70-75 regarding Simec's affiliated downstream sales; (b) window period sales and (c) in order to review Simec's to-be-submitted responses as to any needed corrections and supplements, given that insufficient time had been granted to respond. Commerce denied this request on September 7, 2021.

25. Simec thereafter timely submitted its responses to Commerce's Supplemental Section A-D Questionnaire which were due September 7, 2021.

26. Although Commerce subsequently indicated that certain of the responses submitted by Simec on September 7, 2021 were inadequate, it never issued any follow-up questionnaires to Simec for the remainder the administrative review. Commerce refused to do so although the administrative review was not completed until approximately ten months later. Commerce did,

6

however, subsequently issue a second Supplemental Questionnaire to Deacero on September 22, 2021 and a *third* Supplemental Questionnaire to Deacero on November 3, 2021.

27. On October 18, 2021—the deadline for Deacero to submit responses to Commerce's second Supplemental Questionnaire—Simec submitted additional factual information to Commerce (Simec's "October 18th filing").

28. Simec requested that Commerce accept the additional information because of the numerous challenges faced by Simec in preparing its responses to Commerce's earlier Supplemental Questionnaire and because Commerce was still accepting new factual information from Deacero. Simec additionally explained to Commerce that Simec's October 18th filing included additional information as to seven (7) of the more than 275 questions included in Commerce's Supplemental Questionnaire to Simec, as well as translations that had been embedded as comments in documents previously submitted with Simec's Supplemental Questionnaire Responses. This information had been inadvertently stripped by computer operation from the documents during the process of filing the information on Commerce's ACCESS site.

29. On October 19, 2021, Commerce rejected Simec's October 18th filing. Commerce explained that it was rejecting Simec's October 18th filing as untimely because the information submitted had been requested in the Supplemental Questionnaire directed to Simec.

30. On November 30, 2021, Commerce issued the preliminary results of the administrative review, which were published in the Federal Register on December 3, 2021. *See Steel Concrete Reinforcing Bar From Mexico: Preliminary Results of Antidumping Duty Administrative Review*; 2019–2020, 86 Fed. Reg. 68,632 (Dec. 3, 2021) ("Preliminary Results"); Issues and Decision Memorandum accompanying *Steel Concrete Reinforcing Bars From Mexico,* 86 Fed. Reg. 68,632 (Dep't Commerce Dec. 3, 2021) ("Preliminary IDM").

31. In the Preliminary Results, Commerce determined that Simec would be preliminarily assigned a rate of rate of 66.70% based on the application of adverse facts available ("AFA") under 19 U.S.C. § 1677e(b). *See* Preliminary Results, 86 Fed. Reg. at 68,633-68,634, and accompanying Preliminary IDM at 4-10. Commerce further stated that it did not need to corroborate the AFA 66.70% rate because it was the total AFA rate applied to Grupo Simec in the investigation 7 years earlier. *See* Preliminary IDM at 8-9 (citing 19 U.S.C. § 1677e(c)(2)).

32. On February 11, 2022, Simec and Grupo Acerero S.A. de C.V. both filed administrative case briefs with Commerce challenging the Preliminary Results, including Commerce's use of AFA as to Simec.

33. On February 18, 2022, Simec filed an administrative rebuttal brief with Commerce further challenging the Preliminary Results, including Commerce's use of AFA as to Simec.

34. On June 2, 2022, Commerce issued the Final Results of the administrative review. The Final Results were published in the Federal Register on June 8, 2022. In the Final Results Commerce assigned an antidumping duty rate of 66.7% to Simec based on total adverse facts available.

## STATEMENT OF CLAIMS

### COUNT I

35. The above-referenced allegations are incorporated by reference and restated as if fully set forth herein.

36. Commerce's application of total AFA to Simec based on its finding that Simec did not cooperate to the best of its ability in responding to Commerce' requests for information was arbitrary and capricious, an abuse of discretion, not supported by substantial evidence on the record and was otherwise contrary to law. As to this and the below Counts, see *Celik Halat ve Tel Sanayi*

*A.S. v. United States*, Ct. No. 21-00045, slip. op. no. 22-54 (CIT May 26, 2022, Judge Timothy C. Stanceu); *Celik Halat ve Tel Sanayi A.S. v. United States*, Ct. No. 21-00050, slip. op. no. 22-55 (CIT May 26, 2022, Judge Timothy C. Stanceu) where such issues were especially addressed.

## COUNT II

37. The above-referenced allegations are incorporated by reference and restated as if fully set forth herein.

38. Commerce's failure to calculate a dumping margin for Simec based on Simec's own information and decision to instead use adverse facts available was arbitrary and capricious, an abuse of discretion, not supported by substantial evidence and otherwise not in accordance with law.

## COUNT III

39. The above-referenced allegations are incorporated by reference and restated as if fully set forth herein.

40. Commerce's denial of Simec's full extension requests so early in the review process was without sufficient justification and failed to consider the record as a whole, including Commerce's own substantial delays in issuing its Supplemental Questionnaire. It was, therefore, arbitrary and capricious, an abuse of discretion, not supported by substantial evidence and otherwise not in accordance with law.

## Count III

41. The above-referenced allegations are incorporated by reference and restated as if fully set forth herein.

42. Commerce's failure to issue follow-up questionnaires to Simec requesting the additional information Commerce may have needed to comply with its statutory obligation to

9

calculate an accurate dumping margin for Simec was arbitrary and capricious, an abuse of discretion, not supported by substantial evidence and otherwise not in accordance with law.

### COUNT IV

43. The above-referenced allegations are incorporated by reference and restated as if fully set forth herein.

44. Commerce's failure to accept Simec's October 18, 2021 filing in order to supplement its earlier questionnaire responses, while simultaneously accepting supplemental responses from co-respondent Deacero, and later issuing and accepting responses to a third supplemental questionnaire from Deacero, was arbitrary and capricious, an abuse of discretion, not supported by substantial evidence and otherwise not in accordance with law.

### COUNT V

45. The above-referenced allegations are incorporated by reference and restated as if fully set forth herein.

46. In applying total adverse facts available, Commerce selected adverse facts which bear no relationship to commercial reality, were disproportionate to the situation and resulted in highly distorted Final Results. In particular, the use of the 66.7% rate from the 7-year-old investigation is 46 times greater than the most recent verified dumping rate found for Simec (1.46%) and 34 times the average calculated rate (1.98%) over the prior 7 intervening years of administrative reviews under this antidumping order. The 66.7% rate has never been verified by Commerce in any administrative review (or the original investigation) for any party, including Simec, since being posited in the original investigation in 2014. Rather, in the intervening 7 years Commerce has repeatedly verified other rates showing that the 66.7% rate grossly inaccurate.

47. Commerce's calculated final rate was therefore excessive and does not reflect commercial reality. It is thus arbitrary and capricious, an abuse of discretion, not supported by substantial evidence and otherwise not in accordance with law.

### COUNT VI

48. The above-referenced allegations are incorporated by reference and restated as if fully set forth herein.

49. Commerce's failure to apply neutral facts available was arbitrary and capricious, an abuse of discretion, not supported by substantial evidence and otherwise not in accordance with law.

### COUNT VII

50. The above-referenced allegations are incorporated by reference and restated as if fully set forth herein.

51. It is well-settled that Commerce's selection of an AFA rate must reflect the "situation that resulted in the administering authority using an adverse inference." See 19 U.S.C. § 1677e(d)(2).  Commerce unlawfully failed to do so here.

52. Commerce applied a punitive rate of 66.7% against Simec based on Simec's unintentional, nonfraudulent acts which resulted in substantially complete responses to most of Commerce's 275-part supplemental questionnaire within a response time of less than 5 weeks in the midst of a global pandemic that killed three of its antidumping response team members. When considered in their totality, Commerce's actions in these regards were arbitrary and capricious, an abuse of discretion, not supported by substantial evidence and otherwise not in accordance with law.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment from the Court:

a) sustaining all Counts hereinabove;

b) awarding attorneys' fees and costs;

c) remanding this matter to Commerce for disposition consistent with the Court's final opinion; and

d) granting such other relief as the Court may deem just and proper.

    Respectfully submitted,

    s/ James L. Rogers
    James L. Rogers, Jr.
    **Nelson Mullins Riley & Scarborough LLP**
    2 W. Washington Street, Suite 400
    Greenville, SC 29601
    Phone: (864) 373-2216
    Email: jay.rogers@nelsonmullins.com