# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| GRUPO ACERERO S.A. de C.V., <br> GRUPO SIMEC S.A.B. de C.V., *et al.*, <br>                        Plaintiffs, <br> and <br> GERDAU CORSA, S.A.P.I. de C.V., <br>                      Plaintiff-Intervenor, <br>               v. <br> UNITED STATES, <br>                      Defendant, <br> and <br> REBAR TRADE ACTION COALITION, <br>                      Defendant-Intervenor. | Consol. Court No. 22-00202 |

**DEFENDANT'S REPLY IN RESPONSE TO PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S JOINT RESPONSE IN OPPOSITION TO DEFENDANT'S <u>MOTION FOR LEAVE TO CORRECT THE ADMINISTRATIVE RECORD</u>**

Defendant, the United States, respectfully submits this reply in response to the plaintiffs' and plaintiff-intervenor's joint response in opposition (Joint Resp.), ECF No. 29, to our motion for leave for the Department of Commerce (Commerce) to correct the administrative record. In the joint response, plaintiffs Grupo Acerero S.A. de C.V., Grupo Simec S.A.B. de C.V., *et al.* (collectively, Grupo Simec), and plaintiff-intervenor Gerdau Corsa, S.A.P.I. de C.V. (Gerdau) make three arguments: (1) Commerce may not supplement the record with the "Grupo Simec

Questionnaire Deficiencies Analysis" (Deficiencies Memorandum) because it is allegedly new information and the parties never had an opportunity to comment on its contents; (2) Commerce is barred from correcting the record with the Deficiencies Memorandum because it was statutorily required to publish the memo with the final results; and (3) Commerce cannot demonstrate good cause. As we explain below, not only are these arguments meritless, but more importantly, plaintiffs fail to address how the Court can meaningfully review the final results without the correction of the administrative record.

I. **The Deficiencies Memorandum Is The Business Proprietary Portion Of The Final Results, And Parties Do Not Comment On The Final Results Before Commerce**

Plaintiffs' first argument conflates the contents of the Deficiencies Memorandum with that of new factual information that Commerce (or other parties) place on the record. *See* Joint Resp. at 5-10. They point to the 25-page length of the Deficiencies Memorandum versus Commerce's six-page discussion of identified deficiencies to Grupo Simec's responses in the preliminary results, and argue that "{a} simple comparison of the length of the documents demonstrates that they cannot possibly be conveying the same information or findings." *Id.* at 6. Relatedly, plaintiffs argue that the Deficiencies Memorandum "contains specific detailed analysis and Commerce's characterizations of *key facts*, as compared to the brief summary of the issues provided" in the preliminary results. *Id.* at 7 (emphasis added).

This argument is a red herring. Commerce explained in the issues and decision memorandum (IDM) accompanying the final results that it *summarized* its findings as to Grupo Simec's deficient responses in the IDM (over five pages), and that the Deficiencies Memorandum was a standalone document "{d}ue to the proprietary nature of certain information

and issues."[1]  IDM at 15.  Also, it is commonsense that after the parties had an opportunity to comment on Grupo Simec's deficiencies in their administrative case briefs, the final results would have a "more robust discussion of the individual issues" than the discussion contained in the preliminary results.  *Id.* at 24.

Moreover, plaintiffs incorrectly characterize the information in the Deficiencies Memorandum as new factual information, for which, pursuant to 19 C.F.R. § 301(c)(4), parties must be given an opportunity to introduce rebuttal facts.  Joint Resp. at 8.  Rather, the Deficiencies Memorandum (dated concurrently with the final results) contains Commerce's *analysis* of Grupo Simec's data and is not, in and of itself, new factual information.  *See* IDM at 25 ("{Commerce} reiterate{s} that, as discussed in the Deficiencies Memorandum, Grupo Simec failed to cure a variety of deficiencies *with the data that it submitted*") (emphasis added); *id.* ("as discussed in the Deficiencies Memorandum, *some of the information that Grupo Simec submitted* was either not supported or, in certain instances, even conflicted with other information on the record.") (emphasis added).

Plaintiffs also suggest that the Deficiencies Memorandum is like a verification report in that Commerce "introduced new factual analysis and agency findings that the parties should have been allowed to assess and, as necessary, challenge prior to the agency's issuance of a final decision."  Joint Resp. at 10.  Again, this is wide of the mark of what the Deficiencies Memorandum actually is.

Commerce explained that "{a}s the Deficiencies Memorandum discusses, the deficiencies contained in the supplemental questionnaire responses and evaluated in the

---

[1] Commerce was actually *protecting* Grupo Simec's business proprietary information from public disclosure, as it is required to do pursuant to 19 C.F.R. §§ 351.301-306.

*Preliminary Results* were all deficiencies that arose in the initial questionnaire responses and that Grupo Simec failed to correct or explain in the supplemental questionnaire responses, despite being given an opportunity to do so." IDM at 15. Indeed, plaintiffs already *had* the chance to respond to Commerce's identified deficiencies in their administrative case briefs, which Commerce explained in the final results. *Id.* (noting that in Grupo Simec's administrative case brief, it "contends that Commerce could either implement its own corrections to resolve the deficiency or that the deficiency was immaterial to the calculation of an accurate dumping margin."); *see also* 19 C.F.R. § 351.309 (requiring a case brief to "present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results"). Under plaintiffs' theory, every time Commerce analyzes information, it would have to issue pre-final or post-preliminary memoranda, which would lead to a never-ending cycle of commenting. But pursuant to 19 U.S.C. § 1673b(b) and 19 U.S.C. § 1673d(a), Commerce is only required to release a preliminary determination and a final determination: there are no statutory requirements for Commerce to issue any other determination and allow parties to comment between the preliminary and final determinations.

Thus, merely characterizing the Deficiencies Memorandum as new factual information does not make it so. Plaintiffs cite no authority, nor are we aware of any, that Commerce's analysis of a respondent's business proprietary information in a separate document intended to accompany the final results somehow constitutes new *factual* information.

## II. While Commerce Missed The Statutory Deadline For Publishing The Deficiencies Memorandum, It Is Still Part Of The Administrative Record

Next, plaintiffs argue that "19 U.S.C. § 1675(a)(3)(a) does not permit Commerce to publish part of its decision according to the 180-day {statutory} deadline *and the remainder* at its

4

leisure." Joint Resp. at 12 (emphasis added). They add that Commerce has "mandatory deadlines for publication of the preliminary and final results" and that it "missed the statutory deadline by a gaping margin." *Id.* at 11-12.

It is undisputed that the Deficiencies Memorandum was not placed on the record at the same time as the final results and the accompanying IDM, which is the point of this motion. However, plaintiffs entirely fail to respond to our argument that Commerce clearly *intended* to have the Deficiencies Memorandum accompany the final results as it was mentioned not only in the IDM, but *also* referred to in the Federal Register notice, regarding why Commerce determined to apply facts available with an adverse inference (AFA) to Grupo Simec's dumping margin. *See Steel Concrete Reinforcing Bar from Mexico*, 87 Fed. Reg. 34,848, 34,849 n.10 (Dep't of Commerce June 8, 2022) (final admin. review).

Moreover, while there are indeed statutory deadlines for Commerce to publish the final determination and to also "publish the facts and conclusions supporting that determination{,}" 19 U.S.C. § 1677f(i)(1), we did not "casual{ly} contend" that those deadlines are not important, as plaintiffs suggest. Joint Resp. at 11. Rather, we explained that Commerce has an obligation to correct the record because the Deficiencies Memorandum is an official record developed by Commerce that "pertain{s} to the proceeding," 19 C.F.R. § 351.104(a)(11), and in this particular circumstance where an official record was inadvertently omitted, there is no statutory provision that would appear to time-bar Commerce from correcting the record. Def.'s Mot. at 3; *cf. Andrews v. Principi*, 351 F.3d 1134, 1137 (Fed. Cir. 2003) (explaining that a statute is hortatory when it "does not prescribe any remedy for its breach").

Moreover, one might imagine other scenarios where Commerce inadvertently omits a

document, or a part of a document, that is not helpful to plaintiffs. For example, if, due to a technical glitch, Commerce inadvertently omits from the record a portion of a party's administrative case brief, but Commerce clearly considered it because there are references to the case brief in the final results. Under plaintiffs' view, Commerce cannot later correct the record to include the missing portion of the referenced case brief, and the party could then be said to have failed to have exhausted its administrative remedies. That view is obviously nonsensical.

Further, plaintiffs argue that Commerce can only correct ministerial errors in a final determination, and that 19 U.S.C. § 1675(h) does not "authorize Commerce to expand the record wholesale to include a lengthy, entirely new memorandum of over two dozen pages." Joint Resp. at 12-13. But similar to other arguments, plaintiffs mischaracterize the *contents* of the Deficiencies Memorandum because it is neither an attempt to correct "ministerial errors" or place new factual information on the record, rather, it was a document in existence at the time Commerce rendered the final determination and mentioned repeatedly throughout the final results. *See Steel Concrete Reinforcing Bar from Mexico*, 87 Fed. Reg. at 34,849 n.10; IDM at 15-16, 24-26.

**III.    Good Cause Exists To Correct The Administrative Record, Because Commerce Did Not Engage In Bad Faith In The Inadvertent Omission Of The Deficiencies Memorandum From The Administrative Record**

Plaintiffs also argue that "the facts and circumstances of this case do not meet the good cause standard, as Commerce waited more than four months" to move to correct the administrative record, "had complete control of the document at all times," and "did not voluntarily acknowledge the omission." Joint Resp. at 14-17. They also suggest that the Court "should be guided by Commerce's practice to reject information filed even minutes after the

6

deadlines Commerce imposes." *Id.* at 17-20.  We disagree, as we explain below.

As a preliminary matter, the United States Court of Appeals for the Federal Circuit has explained that "{t}he presumption that government officials act in good faith is enshrined in our jurisprudence." *Croman Corp. v. United States*, 724 F.3d 1357, 1364 (Fed. Cir. 2013) (citing *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239 (Fed. Cir. 2002)).  To that end, courts presume that government officials "act conscientiously in the discharge of their duties," and to abandon that presumption "requires 'well-nigh irrefragable proof.'" *Id.* (citations and quotations omitted).

To the extent that plaintiffs argue that Commerce officials did not act in good faith because "{w}ithout details about the circumstances" of the creation of the Deficiencies Memorandum, "it is objectively just as likely that someone at Commerce suggested that it would be nice to have {the memo}, but that this document was not actually created until some point in time after the *Final Results* were signed and issued," Joint Resp. at 15, the Court should reject such an unsupported assertion which presumes bad faith.  Such baseless speculation as to the origins of the memo is also belied by the IDM and Federal Register notice, which repeatedly refer to the Deficiencies Memo; indeed, plaintiffs conveniently ignore that the IDM references certain sections *within* the memo in various footnotes.  *See* IDM at 16 n.63 ("Deficiencies Memorandum at III.A.5 (Quantity Adjustments)"); *id.* n.64 ("Deficiencies Memorandum at III.A.4 (Payment Terms)"); *id.* at 24 n.97 ("Deficiencies Memorandum at III.A.4 (Payment Terms)"); *id.* at 25 n.100 ("Deficiencies Memorandum at III.A.6 (Delivery Terms and Inland Freight – Plant/Warehouse to Customer)"); *see also Steel Concrete Reinforcing Bar from Mexico*, 87 Fed. Reg. at 34,849 n.10 ("*see also* Memorandum, 'Grupo Simec Questionnaire

7

Deficiencies Analysis,' dated concurrently with this notice."). Thus, this meritless allegation falls far short of the "well-nigh irrefragable proof" that plaintiffs would need to show in order for such a far-fetched claim to be successful.

Relatedly, they argue that the Deficiencies Memorandum is suspect because it was in Commerce's "exclusive control" and they "were not consulted," "apprised" of it, or given an opportunity to comment on the memorandum "prior to Commerce's issuing the *Final Results*." Joint Resp. at 15. But this argument again ignores Commerce's clear intent that the Deficiencies Memorandum was a means to explain its application of AFA which necessarily involved discussing Grupo Simec's business proprietary information, which could not be done in the publicly filed IDM. IDM at 15.

Next, plaintiffs argue that Commerce did not "voluntarily come forward to alert this Court of an inadvertent omission" as it was attorneys for Grupo Simec who had first alerted Commerce to the missing document. Joint Resp. at 15. They also argue that what is relevant is "not whether the facts are new, but how Commerce interpreted record information in its final consideration of the issue and what its reasoning was for reaching its conclusions," and that the belated discovery of the omitted document may impact their arguments in their briefs. *Id.* at 16. These arguments are not persuasive.

How the omission came to our and Commerce's attention was addressed at the hearing on October 26, 2022, and it is more than a stretch to say that Commerce was not "voluntary" in alerting the Court of the omission; rather, it is incontrovertible that it has been our position from the outset that the administrative record is not complete without the inclusion of the Deficiencies Memorandum. *See* Def. Mot. at 7.

Moreover, plaintiffs cannot credibly allege that the delay in moving to correct the administrative record will prejudice them, since they now have even *more* time to refine their arguments and review the public version of the Deficiencies Memorandum, which Commerce filed on the ACCESS database on October 18, 2022 (nearly two months ago).[2]  Joint Resp. at 5. That is because their motions for judgment on the administrative record will not be due until 90 days *after* the Court issues an order addressing our motion, pursuant to the Court's October 26, 2022, order.  ECF No. 27.

Finally, plaintiffs argue that the Court should not be lenient because "Commerce regularly shows no mercy to submissions filed even a few minutes after the deadlines the agency imposes."  Joint Resp. at 17.  They go even further and argue that not only should the Court deny our motion, but that the Court "should rule that Commerce cannot later place the memo on the record (for example, during remand proceedings)" and that the "equitable result" of Commerce's inadvertent failure to file the Deficiencies Memorandum should be to "keep that memo off the record for review by this Court."  *Id.* at 20.  That is not even *remotely* the standard this Court considers when parties move to correct the administrative record.

While it may be beneficial for plaintiffs to deprive the Court of Commerce's "robust discussion" of the AFA issues in the Deficiency Memorandum, IDM at 24, the fundamental and overarching issue is that Commerce has a statutory obligation to have a complete record and it never attempted to play "hide-the-ball" with respect to the existence of the Deficiencies Memorandum.  *See* 19 U.S.C. § 1516(a)(b)(2)(A)(i); 19 C.F.R. § 351.104(a)(1).  They have also

---

[2] The filing of only the public version of the Deficiencies Memorandum on ACCESS was set in motion once the Court granted the now-vacated October 17, 2022, order.  ECF No. 21. No party to this proceeding will have access to the confidential version of the Deficiencies Memorandum unless and until the Court grants our motion.

offered no examples where this Court has denied a government motion to correct the administrative record, where we have moved for an inadvertently omitted document to be included on the administrative record. *See generally* Joint Resp. Including the Deficiencies Memorandum in the administrative record also conserves judicial resources, because if the Court were to remand the AFA issue for further explanation, plaintiffs have pointed to no authority which would prevent Commerce from including the Deficiencies Memorandum on the remand record.

Rather, consistent with precedents, the Court should grant our motion because without the Deficiencies Memorandum, which is "so integral to Commerce's analysis" to apply AFA to Grupo Simec's margin calculation, the Court cannot properly review that determination.[3] *Saha Thai Steel Pipe Public Co., Ltd. v. United States*, 594 F. Supp. 3d 1299, 1308 (Ct. Int'l Trade 2022) (citations omitted); *see also F. Lli De Cecco Di Filippo Fara San Martino S.P.A. v. United States*, 980 F. Supp. 485, 488–89 (Ct. Int'l Trade 1997) (explaining that the record "consists of *all* documents and materials directly or indirectly considered by agency decision-makers{.}") (citation omitted and emphasis added).

## CONCLUSION

For these reasons, we respectfully request that the Court grant this motion to correct the administrative record. If the Court grants this motion, Commerce will file amended administrative record indices within five business days.

---

[3] Plaintiffs mostly sidestep this argument, while conceding that "{t}he Court seemed to understand this" at the October hearing, "when the Court stated that Commerce may lose this case *without* the {Deficiencies Memorandum}." Joint Resp. at 16-17 (emphasis added). Our only focus is on ensuring that the Court has the entire statutorily required record before it for review.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | /s/L. Misha Preheim<br>L. MISHA PREHEIM<br>Assistant Director |
| Of Counsel:<br>IAN A. MCINERNEY<br>Attorney<br>Office of the Chief Counsel<br>  for Trade Enforcement and Compliance<br>U.S. Department of Commerce | /s/Kara M. Westercamp<br>KARA M. WESTERCAMP<br>Trial Attorney<br>Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, DC 20044 |
| December 14, 2022 | Attorneys for Defendant |

11

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 2,753 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

                      s/ Kara M. Westercamp
                      KARA M. WESTERCAMP
                      Trial Attorney