Slip-Op. 23-22

## UNITED STATES COURT OF INTERNATIONAL TRADE

---

GRUPO SIMEC S.A.B. de C.V. et al.,

*Plaintiffs,*

v.

UNITED STATES,

*Defendant,*

*and*

REBAR TRADE ACTION COALITION,

*Defendant-Intervenor.*

---

Before: Stephen Alexander Vaden,
Judge

Consol. Court No. 22-cv-00202

## **OPINION**

[Denying Plaintiffs' Motion for a Preliminary Injunction.]

Dated: February 24, 2023

*James L. Rogers, Jr.*, Nelson Mullins Riley & Scarborough LLP, of Greenville, SC, for Plaintiffs Grupo Simec S.A.B. de C.V., et. al.

*Kara M. Westercamp*, Trial Attorney, U.S. Department of Justice, of Washington, DC, for the Defendant. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, *L. Misha Preheim*, Assistant Director, U.S. Department of Justice, Commercial Litigation Branch, and *Ian A. McInerney*, Of Counsel, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance.

*John R. Shane*, Wiley Rein LLP, of Washington, DC, for the Defendant-Intervenor. With him on the brief were *Alan H. Price*, *Maureen O. Thorson*, *Jeffrey O. Frank*, and *Paul J. Coyle*.

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 2 of 24

Consol. Court No. 1:22-cv-00202                                    Page 2

**Vaden, Judge:**  On August 8, 2022, Grupo Simec S.A.B. de C.V. (including fourteen subsidiaries, collectively, Grupo Simec) filed a complaint challenging the Final Results of the Department of Commerce's (Commerce) Administrative Review in S*teel Concrete Reinforcing Bar from Mexico:  Final Results of Antidumping Duty Administrative Review*; *2019-2020* (Final Results), 87 Fed. Reg. 34,848 (June 8, 2022). Compl. ¶ 1, ECF. No 8.  On the consent of all the parties, Chief Judge Barnett issued an order enjoining liquidation on August 19, 2022.  ECF No. 10.  Citing USCIT Rules 7 and 65(a), Grupo Simec now seeks a further injunction.  It moves to enjoin U.S. Customs and Border Protection (Customs) from collecting cash deposits at the rate set forth in the contested Final Results.  Pls.' Am. Mot. Prelim. Inj. (Pls.' Mot.), ECF No. 32.  Commerce opposes this remedy, as does Defendant-Intervenor Rebar Trade Coalition (the Coalition).  For the reasons that follow, the Motion to enjoin Customs from requiring Plaintiffs to pay cash deposits is **DENIED**.

## BACKGROUND

### I.      Procedural History

On November 6, 2014, Commerce issued an antidumping duty order on concrete reinforcing bar (rebar) from Mexico.  *Steel Concrete Reinforcing Bar from Mexico:  Antidumping Duty Order,* 79 Fed. Reg. 65,925 (Nov. 6, 2014).  Commerce began an annual review of the order on January 6, 2021.  *See Initiation of Antidumping Duty and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 511, 513 (Jan. 6, 2021).  The agency selected Grupo Simec and Deacero S.A.P.I. de C.V. as mandatory respondents on February 8, 2021.  *See Steel Concrete Reinforcing*

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 3 of 24

Consol. Court No. 1:22-cv-00202                                    Page 3

*Bar from Mexico:  Preliminary Results of Antidumping Duty Administrative Review; 2019-2020* (Preliminary Results), 86 Fed Reg. 68,632, 68,633 (Dec. 3, 2021). Commerce chose Grupo Simec because it was one of "the two largest exporters and/or producers of subject merchandise by volume during the [period of review.]" Preliminary Decision Memorandum (PDM) at 2, Barcode: 4186374-02 A-201-844 REV.  The agency then issued an initial antidumping questionnaire to Grupo Simec on February 8, 2021.  *Id.* at 2.

Grupo Simec submitted multiple extension requests for the various sections of its questionnaire responses, citing challenges caused by COVID-19 restrictions, the amount of data requested, and electricity blackouts.  *See, e.g.*, Section A Extension Request (Feb. 23, 2021) Barcode: 4090967-01 A-201-844 REV.  Commerce granted a number of partial and full extensions in response to these requests.  *See, e.g.*, Extension of Time Section A Response (Feb. 23, 2021), Barcode: 4091001-01 A-201-844 REV.  Grupo Simec then filed its responses on March 8, March 31, and April 7, 2021, respectively.  Section A Questionnaire Response, Barcode: 4095785-01 A-201-844 REV; Section B & C Questionnaire Response, Barcode: 4105401-01 A-201-844 REV; Section D Response, Barcode: 4107846-01 A-201-844 REV.

Because of deficiencies in Grupo Simec's initial questionnaire responses, Commerce issued a first supplemental questionnaire focusing on Sections A–C of Grupo Simec's initial responses on July 27, 2021, and a second supplemental questionnaire focusing on Sections A and D on August 4, 2021.  First Supplemental Questionnaire  Barcode:  4146957-01  A-201-844  REV;  Second  Supplemental

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 4 of 24

Consol. Court No. 1:22-cv-00202                                             Page 4

Questionnaire, Barcode: 4149597-01 A-201-844 REV.   The first supplemental questionnaire had an initial deadline of August 17, 2021, and the second supplemental questionnaire had a deadline of August 11, 2021.   *Id.*   Shortly thereafter, Grupo Simec again requested a series of extensions for both questionnaires, citing the large amount of data Commerce requested as well as continued challenges from the pandemic such as loss of staff.   *See, e.g.*, Extension Request (Aug. 9, 2021), Barcode: 4151182-01 A-201-844 REV.   Again, Commerce granted a number of partial extensions.   *See, e.g.*, Extension of Time for Grupo Simec's Supplemental Questionnaire Responses (Aug 10, 2021), Barcode: 4151379-01 A-201-844 REV.

With Commerce's extensions, Grupo Simec's Section A–C responses were due on September 7, 2021, and its Section A & D responses were due on September 9, 2021.   Extension of Time for Section A–C Responses (Sept. 1, 2021), Barcode: 4157267-01 A-201-844 REV; Extension of Time for Section A & D Responses (Sept. 3, 2021), Barcode: 4157901-01 A-201-844 REV.   Despite these extensions, on September 6, 2021, Grupo Simec filed another request for a two week extension to answer specific questions in its Section A–C questionnaire that were due the following day. Extension Request for Downstream Sales Data, Barcode: 4158024-01 A-201-844 REV. Commerce denied this request because Grupo Simec had already "been provided six weeks to prepare and submit their responses," and the request lacked any justification for why additional time was needed.   Denial of Extension (Sept. 7, 2021), Barcode: 4158116-01 A-201-844 REV.   In response to this denial, Grupo Simec filed

another request and reiterated the same points from its previous letters, such as the difficulty of gathering the data given the geographic dispersion of the company and pandemic-related issues.  Second Extension Request for Downstream Sales Data (Sept. 7, 2021), Barcode: 4158573-01 A-201-844 REV.  The agency denied this request because it had already "provided three additional weeks for Grupo Simec . . . to respond to Commerce's supplemental questionnaire covering sections A-C[.]"  Denial of Extension Request at 1 (Sept. 9, 2021), Barcode: 4159298-01 A-201-844 REV.  Grupo Simec also requested a one day extension on September 9, 2021, for its Section A&D responses, which Commerce granted.  *See* Section A&D Extension Request, Barcode: 4159299-01 A-201-844 REV; Granting Extension Request (Sept. 9, 2021), Barcode: 4159336-01 A-201-844 REV.  Grupo Simec filed its Section A&D responses on September 10, 2021.  Submission of Section A&D Supplemental Questionnaire Response, Barcode: 4160054-01 A-201-844 REV.

Over a month later, Grupo Simec attempted to submit what it labeled "Additional Factual Information" to Commerce, consisting of its downstream sales data as well as some translations "inadvertently stripped by computer operation from the documents in the Commerce ACCESS filing process."  Submission of Additional Information at 2 (Oct. 18, 2021), Barcode: 4172584-01 A-201-844 REV.  Because these submissions contained information originally requested in the supplemental questionnaires, Commerce rejected them as untimely filed.  Rejection of Untimely Filed Information (Oct. 19, 2021), Barcode: 4173540-01 A-201-844 REV.

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 6 of 24

Consol. Court No. 1:22-cv-00202                                      Page 6

On December 3, 2021, Commerce issued its Preliminary Results and its accompanying explanation in the Preliminary Decision Memorandum. Preliminary Results, 86 Fed Reg. 68,632; PDM, Barcode: 4186374-02 A-201-844 REV. A review of Grupo Simec's initial questionnaire responses found "deficiencies [that] covered all aspects of Grupo Simec's responses[.]" PDM at 4, Barcode: 4186374-02 A-201-844 REV. Commerce determined that Grupo Simec's supplemental questionnaire responses "continued to fail to provide information Commerce requested," and pervasive errors remained in Grupo Simec's home market sales data, U.S. sales data, and downstream sales data. *Id.* at 5. Commerce concluded that "it d[id] not have any sales-related information that can be used for conducting a dumping analysis," prompting the application of facts available under 19 U.S.C. § 1677m(e)(3). *Id.* at 7. Commerce did not rest there; it also drew adverse inferences from facts otherwise available under 19 U.S.C. § 1677m(d). It explained that "Grupo Simec has failed to cooperate by not acting to the best of its ability in failing to remedy the errors identified by Commerce as well as failing to submit requested information within the established deadline." *Id.* at 8. Commerce then preliminarily assigned a 66.7% dumping margin to Grupo Simec, which was the rate given to it in the original 2014 antidumping investigation. *Id.* at 9.

In its Final Results, Commerce maintained substantially the same position. *See* Final Results, 87 Fed. Reg. at 38,849–50; Issues & Decision Memorandum (IDM), Barcode: 4247887-02 A-201-844 REV. The Final Results defended Commerce's (1) refusal to give Grupo Simec more time to cure its deficiencies and to issue an

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 7 of 24

Consol. Court No. 1:22-cv-00202                                           Page 7

additional questionnaire, (2) rejection of Grupo Simec's late submission, (3) drawing of adverse inferences from facts otherwise available, and (4) assignment of a 66.7% dumping rate to Grupo Simec.  IDM at 4–35.; Barcode: 4247887-02 A-201-844 REV.

First, Commerce explained that it issued two supplemental questionnaires to Grupo Simec and granted multiple extensions, giving Grupo Simec approximately six weeks to complete the supplemental questionnaires.  *Id*. at 9.   The agency also noted that it was aware from the beginning of Grupo Simec's difficulties in preparing its answers because of COVID-19 and that it had kept these difficulties in mind when considering Grupo Simec's extension requests.  *Id*. at 9–10.  The final due date of September 7 came in response to Grupo Simec's September 1, 2021 extension request, and was within the range of the date requested in prior extension requests.  *Id*. at 10.  It was only on September 6 that Grupo Simec filed an additional request for an extension.  *Id*. at 10.  Commerce explained that it rejected this request "because Grupo Simec failed to comply with the basic regulatory requirement of demonstrating good cause existed for the extension."  *Id*. at 11.  It also rejected Grupo Simec's revised extension request — filed on the due date at 4:29 pm — because it "had granted Grupo Simec sufficient time and concluded that no additional extensions were warranted." *Id*.  Commerce asserted that it gave Grupo Simec an opportunity to remedy deficiencies with the two supplemental questionnaires and that the statute does not require it to give the company additional opportunities.  *Id*. at 16.

Next, Commerce explained why it rejected Grupo Simec's submission of additional information on October 18, 2021.  *Id*. at 17.  It rejected this submission

Case 1:22-cv-00202-SAV    Document 42    Filed 02/24/23    Page 8 of 24

Consol. Court No. 1:22-cv-00202                                              Page 8

because the submission "not only failed to comply with basic regulatory requirements but was also an attempt to submit untimely questionnaire responses, described as 'additional information.'" *Id.* The information submitted as additional information was information missing from its supplemental questionnaire response for which the deadline had already passed. *Id.* at 19. Commerce asserted that it was legally entitled to enforce its deadlines and that considering the information — submitted six weeks after the deadline — would have imposed a significant burden on the agency. *Id.* at 19–20.

Commerce then addressed why it was proper to draw adverse inferences from fact otherwise available; namely, Grupo Simec's failure to submit complete responses to the supplemental questionnaires. *Id.* at 25. Given the widespread and pervasive deficiencies, it found that "the data [Grupo Simec] placed on the record is incomplete and cannot easily be corrected or resolved by Commerce." *Id.* at 26. The agency also found that Grupo Simec had not cooperated to the best of its ability because its supplemental questionnaire responses had "many of the same deficiencies that were flagged in its initial questionnaire response[.]" *Id.* at 28. Finally, the selection of a 66.7% rate was appropriate because Grupo Simec failed to comply with the multiple requests for information and this rate was applied to Grupo Simec in the initial investigation based on a similar set of facts. *Id.* at 33–34. Grupo Simec's resulting lawsuit challenges all these findings. Complaint ¶¶ 35–52, ECF No. 8.

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 9 of 24

Consol. Court No. 1:22-cv-00202                                    Page 9

## II.    Legal Background

The Tariff Act of 1930 authorizes Commerce to investigate alleged dumping activity.  If documented, the agency imposes antidumping duties on the unfairly priced goods.  *Sioux Honey Ass'n v. Hartford Fire Ins.*, 672 F.3d 1041, 1046 (Fed. Cir. 2012).  The statute defines dumping as the sale of products in the United States by a foreign company at prices below their fair value.  19 U.S.C. § 1677b(a).

To impose antidumping duties, Commerce assesses whether goods are being sold at less than their fair value.  19 U.S.C. § 1673.  If dumping has occurred, the International Trade Commission (ITC) then evaluates whether American domestic industries producing like goods are materially injured or threatened with material injury. The ITC also determines whether the domestic growth of industries producing the same goods is threatened by the sale of the dumped product.  *Id.*  If dumping is documented to have "materially injured" or "threatened with material injury" a domestic industry, or "materially retarded" the establishment of a domestic industry, Commerce proceeds to impose antidumping duties.  19 U.S.C. § 1673(2)(A)–(B).

For individual companies under investigation, Commerce's action vis-à-vis duties begins when the Department preliminarily concludes that duties are appropriate.   Its staff then publishes a detailed preliminary determination establishing the duty rates assessed for specific cases, providing baseline explanations for its findings.  19 U.S.C. § 1673b(d)(1).  Afterward, Commerce orders exporters to post security for subject merchandise.  Liquidation is suspended on "all entries of merchandise subject to the [preliminary] determination which are entered,

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 10 of 24

Consol. Court No. 1:22-cv-00202                                    Page 10

or withdrawn from [a] warehouse, for consumption on or after" publication of the preliminary determination or sixty days from publication of notice of initiation of the investigation.   19 U.S.C. § 1673b(d)(2)(A)–(B).   The duty rates provided in the preliminary determination and a halt on liquidation are imposed for a minimum of four and a maximum of six months.  19 U.S.C. § 1673b(d)(3).  Commerce then provides a final determination of duty rates.   If its initial determination is sustained, the suspension of liquidation applied to subject merchandise remains in place through the process of administrative review.  *See* 19 U.S.C. § 1673d(c)(4).

Affected businesses may face hardships because of the United States' "'retrospective' assessment system."  19 C.F.R. § 351.213(a).  This system requires that "final liability for antidumping . . . duties is determined after merchandise is imported."  *Id.*  Final duty liability is decided following an administrative review.  *Id.* An antidumping order may be reviewed following a request submitted after the first anniversary of its publication.  19 C.F.R. § 351.213(a)(b)(1).  The first administrative review examines the period from the commencement of the suspension of liquidation to the month immediately prior to the anniversary month.  In the case of subsequent reviews, the evaluation takes place one year immediately prior to the anniversary month.  19 C.F.R. § 351.213(e)(1).  Once these administrative reviews are completed, Commerce publishes the final applicable duty rates.   Customs then liquidates relevant entries within ninety days.  19 U.S.C. § 1675(a)(3)(B).

Distinct from preliminary injunctions to suspend liquidation, enjoining the collection of cash deposits is a separate and unusual remedy.  The former seeks to

preserve a party's litigation options and ensure a full and fair review of duty determinations before liquidation. The statute expressly contemplates these steps. *See* 19 U.S.C. § 1516a(c)(2) (providing that the CIT "may enjoin the liquidation of some or all entries of merchandise covered by a determination of the Secretary, the administering authority, or the Commission"). However, the latter remedy is rare and harder to obtain because the statutory and regulatory antidumping duty regime envisions a stricter application of the procedure. *See* 19 U.S.C. §§ 1671f, 1673f, 1677g; 19 C.F.R. § 351.205(d) (providing for importers to pay cash deposits higher than what is finally determined they owe, relying on subsequent mechanisms to return excess collections). Congress chose this prepayment process to protect the public fisc and to ensure the Government receives the tariffs due. *See* 19 U.S.C. § 1673b(d)(1)(B). The deposit requirement remains even in instances where a party's potential liability remains uncertain. *Id.* (requiring collection of cash deposits on affirmative preliminary determination in antidumping duty investigation); 19 U.S.C. § 1673d(c)(1)(B)(ii) (making the continuation of cash deposits obligatory on the issuance of an affirmative final determination for antidumping duty investigations). The distinction between liquidation and the statutory deposit requirement — reflected in the likelihood of successfully enjoining each — is grounded in the text of relevant statutes as well as longstanding CIT jurisprudence.

### III.  Prior Injunctive Relief

The Court takes special notice in this case of the injunctive relief already provided to Plaintiffs. Eleven days after Grupo Simec filed its Complaint, Chief

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 12 of 24

Consol. Court No. 1:22-cv-00202                                                Page 12

Judge Barnett enjoined liquidation on August 8, 2020.  ECF No. 10.  The basis for Plaintiffs' Motion is their insistence that this initial equitable remedy remains insufficient.  To avoid permanent harm to its business interests, Grupo Simec now seeks a preliminary injunction preventing Customs from collecting cash deposits. Like the injunction obtained against liquidation, Grupo Simec seeks this additional equitable relief pending the completion of legal proceedings arising from its challenge to the Final Results.

## JURISDICTION AND STANDARD OF REVIEW

The Court maintains adjudicatory authority over the underlying action.  28 U.S.C. § 1581(c).  "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A or 517 of the Tariff Act of 1930." *Id.*  At this early stage in the case, Plaintiffs seek a second preliminary injunction, an extraordinary form of equitable relief.  It shall issue only where the movant establishes that:  (1) it will suffer irreparable harm absent the requested relief; (2) it is likely to succeed on the merits of its underlying claim; (3) the balance of the hardships favors the movant; and (4) an injunction would serve the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983) (citations omitted).

In the Federal Circuit, the fulfillment of the four factors bears a complex relationship to the resolution of the motion.  "'[N]o one factor, taken individually, is necessarily dispositive.'"  *Ugine & Alz Belg. v. United States*, 452 F.3d 1289, 1292–93

(Fed. Cir. 2006) (quoting *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993)).  However, "irrespective of relative or public harms, a movant must establish both a likelihood of success on the merits *and* irreparable harm[.]" *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (refusing to grant plaintiff preliminary relief "unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm.") (citation omitted). Because "the weakness of the showing regarding one factor may be overborne by the strength of the others," *FMC Corp.*, 3 F.3d at 427, "the more the balance of irreparable harm inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits [plaintiffs] need show in order to get the injunction." *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1378–79 (Fed. Cir. 2009) (quoting *Kowalski v. Chi. Trib. Co.*, 854 F.2d 168, 170 (7th Cir. 1988)).

Nonetheless, "an [adequate] showing on one preliminary injunction factor does not warrant injunctive relief in light of a weak showing on other factors." *Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 100 (Fed. Cir. 2014) (citing *Winter*, 555 U.S. at 22).  *Cf. Winter*, 555 U.S. at 26 (denying injunctive relief because of public interest in national security); *Sumecht NA, Inc. v. United States*, 331 F. Supp. 3d 1408, 1412 (CIT 2018), *aff'd*, 923 F.3d 1340 (Fed. Cir. 2019) (lacking evidence of immediate irreparable harm compels denial of preliminary injunction); *Otter Prods., LLC v. United States*, 37 F. Supp. 3d 1306, 1316 (CIT 2014) (failing to establish irreparable harm sufficient to deny injunction).

Case 1:22-cv-00202-SAV    Document 42    Filed 02/24/23    Page 14 of 24

Consol. Court No. 1:22-cv-00202                                    Page 14

USCIT Rule 65, governing motions for preliminary injunctions, is parallel to Federal Rule of Civil Procedure 65.  The Federal Circuit has held that the latter does not require a hearing on a motion for a preliminary injunction.  *See Murata Mach. USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1364 (Fed. Cir. 2016) ("We do not ask, nor do the Federal Rules of Civil Procedure require, that the district court conduct a preliminary injunction hearing, or even request a responsive brief.").  USCIT Rule 65 is nearly identical to Federal Rule 65:  "It was obviously taken from the federal rule, and it therefore is appropriate to look to decisions under the latter in interpreting and applying the identical rule of the Court of International Trade." *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1353 (Fed. Cir. 2003).  Thus, USCIT Rule 65, like the parallel federal rule, does not require a hearing before ruling on a motion for a preliminary injunction.[1]

## DISCUSSION

## Preliminary Injunction

### A.  Irreparable Harm

For Plaintiffs to prevail, they must establish that irreparable injury is likely to accrue to them immediately if the requested equitable relief does not issue. *Winter*, 555 U.S. at 22.  Harm is irreparable if "no damages payment, however great," could redress it.  *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).  Imminence of injury is also required, *Zenith Radio*, 710 F.2d at 809, yet this immediacy does not equate to a demonstration that the harm complained of has

---

[1] None of the parties has requested a hearing.

already occurred.  *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (holding movant must show a "cognizable danger of recurrent violation, something more than a mere possibility which serves to keep the case alive").  A moving party must put forward more than mere "speculative" evidence to demonstrate an "immediate and viable" likelihood of injury.  *Otter*, 37 F. Supp. 3d at 1315 (quoting *Kwo Lee, Inc. v. United States*, 24 F. Supp. 3d 1322, 1326 (CIT 2014)); *Sumecht*, 331 F. Supp. 3d at 1412 (citing *Zenith Radio*, 710 F.2d at 809).  To analyze whether Plaintiffs have met this "extremely heavy burden," *Shandong Huarong Gen. Grp. v. United States*, 122 F. Supp. 2d 1367, 1369 (CIT 2000), the Court will assess "the magnitude of the injury, the immediacy of the injury, and the inadequacy of future corrective relief."  *Sunpreme, Inc. v. United States*, 181 F. Supp. 3d 1322, 1331 (CIT 2016).

Bare financial losses neither constitute nor substantiate irreparable harm, even when they signal economic damage to an entity.  This derives in part from the presumed effectiveness of corrective relief for monetary injury that a court may provide at a later date.  *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (noting that "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm"); *Corus Group PLC v. Bush,* 217 F. Supp. 2d 1347, 1355 (CIT 2002) (holding "economic injury" insufficient to establish irreparable harm).  The *Corus* Court found, for example, that *plans* to close a plant to avoid "operat[ing] at a loss," did not establish irreparable harm because there was no "danger of imminent

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 16 of 24

Consol. Court No. 1:22-cv-00202                                      Page 16

closure" of the plant. 217 F. Supp. 2d at 1355. On the other end of the spectrum, bankruptcy stemming from a substantial decline of business is grave enough to demonstrate the inadequacy of later corrective relief. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) ("Certainly [bankruptcy] sufficiently meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless."); *McAfee v. United States*, 3 CIT 20, 24 (1982) ("It is difficult for this court to envision any irreparable damage to a plaintiff and his business more deserving of equitable relief than the very loss of the business itself."). Generally, a movant must show "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities" severe enough to represent an imminent threat to the continuation of the business. *Celsis In Vitro*, 664 F.3d at 930 (citing *Abbott Labs. V. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008)).

Plaintiffs' Motion fails to meet this high standard because it lacks evidence of the alleged harm's immediacy and irreparability.[2]   An authoritative dictionary instructs that "immediate" equates to "occurring, acting, or accomplished without loss of time," providing the synonym "instant," with the secondary definition of "near to or related to the present." *Immediate*, WEBSTER'S THIRD NEW INT'L DICTIONARY (1968). Precedent echoes the dictionary. In *Shandong Huarong*, an affidavit from an importer's "major [American] customer," attesting that it would be compelled to cancel all orders in the event that the court sustained cash deposits, was adjudged "'weak evidence, unlikely to justify a preliminary injunction,'" largely

---

[2] Grupo Simec was offered the opportunity to file a reply brief responding to the Government's and the Coalition's arguments.  It declined.

because it fell short of "indicating exactly how and when these lost sales would force [plaintiff] out of business." 122 F. Supp. 2d at 1370 (quoting *Shree Rama Enterprises v. United States*, 983 F. Supp. 192, 195 (CIT 1995)).

Grupo Simec's affidavits similarly offer weak evidence and do not show immediate and irreparable harm. Grupo Simec offers an affidavit from its chief financial officer stating that it has stopped exporting rebar to the United States because of the 66.7% rate and that the company is "incur[ring] substantial loss of new and existing customers, business opportunities and goodwill." Pls.' Mot. at Ex. 1, ECF No. 32. Grupo Simec offers another affidavit from its foreign trade manager asserting that, without a preliminary injunction, the company will have to lay off employees and that the collection of deposits threatens one of Grupo Simec's fourteen subsidiaries with insolvency. *Id.* at Ex. 2. These statements are conclusory and insufficient to show immediate and irreparable harm. The affidavits offer no timeline for the alleged termination of employees or insolvency of the subsidiary in question. Plaintiffs have therefore failed to "indicat[e] exactly how and when these lost sales would force [them] out of business." *Shandong Huarong*, 122 F. Supp. 2d at 1371. Absent such information, Grupo Simec fails to show that the alleged harms are immediate.

At first glance, the statement that a subsidiary is threatened with insolvency seems like irreparable harm. But showing irreparable harm demands more than

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 18 of 24

Consol. Court No. 1:22-cv-00202                                      Page 18

conclusory statements.[3]  As in *Shandong Huarong*, "no financial statements have been proffered indicating that Plaintiff does not possess the capital reserves necessary to remain viable during this litigation." *Id.* at 1371; *accord Companhia Brasileira Carbureto de Calcio v. United States,* 18 CIT 215, 217 (1994) (refusing to find irreparable harm when "no hard evidence was submitted to the court indicating what specific effect loss of such sales would have upon [plaintiff]"); *Chilean Nitrate Corp. v. United States,* 11 CIT 538, 541 (1987) (refusing to find irreparable harm when "Plaintiff's witness did not testify that financing was sought and denied.  No financial statement demonstrating lack of reserves was presented."). *Cf. Jiangsu Hilong Int'l Trading Co. v. United States*, No. 02-00311, Order Granting Prelim. Inj., ECF No. 15 (CIT June 4, 2002) (granting injunction where plaintiff produced financial records confirming insolvency claims).  Grupo Simec has offered no evidence corroborating its affidavits; therefore, its purported harm is only "speculative." *Otter*, 37 F. Supp. 3d at 1315.

The letters from two of Grupo Simec's customers are unable to fill the evidentiary gap.  *See* Pls.' Mot. at Exs. 3–4.  Both letters remark on the difficulties the customers face now that Grupo Simec has stopped exporting rebar to the United States.  *Id.*  Although both speak to the harm their companies experience, neither speaks to the harms Grupo Simec's officers allege in their affidavits.  *Id.*  At most, they provide corroboration of the claim that Grupo Simec stopped exporting rebar to

---

[3] Even if Grupo Simec had properly shown irreparable harm and had a sufficient showing on all remaining factors, it would only be entitled to an injunction pertaining to that individual subsidiary — not a blanket injunction covering all subsidiaries as it requests.  *See* Pls.' Mot. at 1, ECF  No. 32.

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 19 of 24

Consol. Court No. 1:22-cv-00202                                          Page 19

the United States, but a foreseeable result of the operation of the antidumping statute cannot alone provide the basis for a finding of irreparable harm. *See Shandong Huarong*, 122 F. Supp. 2d at 1371–72 (refusing to find irreparable harm caused by ceasing to export when "Plaintiff has not produced any evidence establishing that it would go out of business during the year 2000, thereby negating the possibility of selling its excess inventory in the future."). If it was sufficient, an injunction could issue every time a party ceased exporting to the United Sates to avoid paying the assessed rate. This result would eviscerate the operation of the antidumping laws and obtaining an injunction would be automatic rather than the "extremely heavy burden" the law requires. *Id.* at 1369.

Grupo Simec has not met its burden of demonstrating irreparable and immediate harm. This failure is sufficient to deny the Motion; however, the Court briefly considers the other factors for completeness. *See Reebok*, 32 F.3d at 1556 ("While a district court must consider all four factors before granting a preliminary injunction to determine whether the moving party has carried its burden of establishing each of the four, we specifically decline today to require a district court to articulate findings on the third and fourth factors when the court denies a preliminary injunction because a party fails to establish either of the two critical factors."). Grupo Simec unfortunately fairs no better with those analyses.

## B. Likelihood of Success on the Merits

In addition to demonstrating that irreparable harm would occur without an injunction, a movant must also establish a likelihood of success on the merits to

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 20 of 24

Consol. Court No. 1:22-cv-00202                                    Page 20

obtain the extraordinary remedy of enjoining the collection of cash deposits. *Sunpreme*, 181 F. Supp. 3d at 1332. When the Court assesses Commerce's tariff determinations, the Court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i). Grupo Simec raises six distinct arguments against the Final Results, alleging that they lack substantial evidentiary support or result from Commerce's abusing its discretion. Pls.' Mot. at 20–33, ECF No. 32.

Commerce counters that substantial evidence supports its decision to apply adverse inferences from facts otherwise available because of the pervasive errors in Grupo Simec's submissions. Def.'s Resp. at 19–20, ECF No. 37. This is all-the-more remarkable, Commerce observes, given Grupo Simec's status as a company with prior experience undergoing such reviews. *See* IDM at 9, Barcode: 4247887-02 A-201-844 REV; *see also* Def. Int's Resp. at 2 (explaining that "not only did Simec request a review of its 2019-2020 entries, but it was a seasoned respondent with significant experience in responding to Commerce's questionnaires"). Similarly, the contention that Commerce acted *ultra vires* in rejecting Grupo Simec's late submission of data and denying its extension requests fails because the filing was properly rejected as untimely, and Commerce granted many extensions to Grupo Simec. Def.'s Resp. at 20–21. Indeed, the attempted late submission was much later than the extended deadline that Grupo Simec originally requested. *See* IDM at 18; Barcode: 4247887-02 A-201-844 REV (noting that the company had requested a nine day extension but

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 21 of 24

Consol. Court No. 1:22-cv-00202                                    Page 21

then attempted to submit the missing data six weeks later).  Commerce also contests

the company's claims that the rate selection was punitive and that it had cooperated

to the best of its ability.  Because the rate was based on a similar set of facts to when

the rate was applied previously and Grupo Simec failed to submit the requested

information despite opportunities to cure the deficiencies, Commerce asserts that

substantial evidence supports its decisions.  *Id.* at 21–22.  Defendant-Intervenor the

Coalition also filed a response brief arguing many of the same points as the

Government.  *See* Def.-Int.'s Resp. at 1, ECF No. 35.  In addition, the Coalition asserts

that Grupo Simec received notice and an opportunity to cure the deficiencies because

Commerce provided it with supplemental questionnaires after Grupo Simec provided

inadequate answers to the initial antidumping questionnaire.  *Id.* at 27.

Although Grupo Simec's claims are colorable, it has not demonstrated a clear

likelihood of success on the merits. The Government contests these claims, and there

is no claim that is obviously meritorious at this stage of the case.  At best, this factor

is neutral for Grupo Simec.  Even if one of the company's six claims were clearly

meritorious, an injunction cannot issue without a finding of irreparable harm, which

is absent here.  *See Reebok*, 32 F.3d at 1556; *Amazon.com*, 239 F.3d at 1350.

### C. Balance of the Equities

Plaintiffs misconstrue the balance of equities at this juncture in the case.  The

harms Grupo Simec claims it will suffer include ceasing exportation of rebar during

the time it is subject to the current rate as well as potential job losses, loss of customer

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 22 of 24

Consol. Court No. 1:22-cv-00202                                              Page 22

goodwill, and the possible insolvency of one subsidiary.[4] Pls.' Mot. at 34. America's retroactive system, financially inconvenient as it may be, is the course Congress chose and committed to Commerce and Customs to enforce. *Valeo N. Am., Inc. v. United States*, 277 F. Supp. 3d 1361, 1366 (CIT 2017) ("[P]aying deposits pending court review is an ordinary consequence of the statutory scheme.") (quoting *MacMillan Bloedel Ltd. v. United States*, 16 CIT 331, 333 (1992)). The statutory scheme's foreseeable result does not amount to a cause for equitable relief. *See Shandong Huarong*, 122 F. Supp. 2d at 1371–72 (noting that a plaintiff could always sell excess stock it did not export the following year). As noted earlier, these harms fail to meet the threshold of "irreparability" in the Court's analysis and ignore the countervailing evidence that at least one of Grupo Simec's customer affiants maintained its business relationship with Grupo Simec the last time it was subjected to a 66.7% tariff rate. *See* Pls.' Mot. at Ex. 4, ECF No. 32 (stating that the company "has been a long-standing customer of Groupo [*sic*] Simec for over 15 years").

Plaintiffs give short shrift to the harm potentially caused to the Government. They fail to consider that their assumption of a minimal impact on the United States contradicts "the determinations at the core of this matter that a tariff increase is necessary to counter-act serious injury or the threat of serious injury[.]" *Corus Group*, 217 F. Supp. 2d at 1356. Commerce's prior findings suggest that significant harm would result if the effective suspension of the underlying tariff would allow

---

[4] The Court notes that Grupo Simec's cash deposit rate will change by April 6, 2023, based on the projected conclusion of the next administrative review. *See* Def.-Int.'s Resp. at 11. This undercuts both the company's argument for irreparable harm and its equities-balancing argument.

Case 1:22-cv-00202-SAV   Document 42   Filed 02/24/23   Page 23 of 24

Consol. Court No. 1:22-cv-00202                                          Page 23

underpriced goods to "flood the market." *Id.* America's domestic industry — the statute's express beneficiary — would lose the remedy Commerce has found it due. Absent exceptional circumstances, a court should be reticent to unwind the entire remedy the Government has ordered, especially when it accords with a clear statutory scheme.

### D. Serving the Public Interest

A review of the circumstances surrounding Grupo Simec's Motion demonstrates granting the relief it seeks does not serve the public interest. Grupo Simec cites its customers' letters attesting to business harms resulting from the deprivation of Grupo Simec's rebar and alleges that "U.S. construction and other projects involving Simec's rebar may be jeopardized." Pls.' Mot. at 34, ECF No. 32. Even accepting these speculative and unsubstantiated claims in the two customer affidavits at face value, the public's greater interest lies in following Congress's legislative enactments and ensuring that Customs collects cash deposits sufficient to protect the public fisc. *See* 19 U.S.C. §§ 1673(c)(1)(B)(ii), 1675(a)(2)(C). The public interest thus favors the Government; and as Plaintiffs have not clearly prevailed in any of the four required analyses, they are not entitled to the extraordinary remedy of a preliminary injunction. *Winter*, 555 U.S. at 20.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for a preliminary injunction. Plaintiffs have not met the criteria necessary for the

extraordinary remedy of enjoining the normal operation of the tariff collection system. It is hereby:

ORDERED that the Motion is **DENIED**; and it is further

**ORDERED** that the briefing schedule established by the Court in its Order of January 27, 2023, shall continue unaffected. *See* ECF No. 40.

**SO ORDERED.**

/s/ Stephen Alexander Vaden
Judge Stephen Alexander Vaden

Dated:  February 24, 2023
New York, New York