## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **GRUPO ACERERO, S.A. de C.V. and GRUPO SIMEC S.A.B. de C.V., et.al.;** |
| **Plaintiffs,** |
| **and** |
| **GERDAU CORSA, S.A.P.I. de C.V.,** |
| **Plaintiff-Intervenor,** |
| **v.** |
| **UNITED STATES,** |
| **Defendant,** |
| **and** |
| **REBAR TRADE ACTION COALITION,** |
| **Defendant-Intervenor.** |

Consol. Court No. 22-cv-00202

**PUBLIC DOCUMENT**

## REPLY OF PLAINTIFF GRUPO SIMEC TO RESPONSE BRIEFS OF DEFENDANT AND DEFENDANT-INTERVENOR

James L. Rogers, Jr.
Nelson Mullins Riley & Scarborough LLP
2 W. Washington Street, Suite 400
Greenville, SC 29601
(864) 373-2300

*Counsel for Grupo Simec*

August 9, 2023

PUBLIC DOCUMNET

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

    I.    Defendants' Response Briefs Provide No Coherent Explanation for Categorically Freezing Simec Out of the Administrative Review Almost Three Months Prior to Commerce Issuing Its Preliminary Results While Continuing to Accept Questionnaire Responses from Co-Mandatory Respondent Deacero During this Same Time Frame. .. 1

        A.    Deacero was not "much further along" in the questionnaire process and, even if Deacero had been further along, that would not justify Commerce's disparate treatment of Simec. ............................................................................................... 7

        B.    Simec was not given an "unusually long" period of time to respond to Commerce's requests and, even if it had been, that would not justify Commerce's disparate treatment of Simec in comparison with Deacero. .................................. 8

    II.    Commerce Abused its Discretion in Rejecting Simec's October 18th Filing. .............. 10

        A.    Simec's October 18th Filing was corrective information submitted well in advance of the Preliminary Results deadline. ................................................................... 10

        B.    The statutory requirement of accuracy in determining antidumping margins outweighs Commerce's desire for finality and so mandates acceptance of Simec's October 18th Filing. .......................................................................................... 12

        C.    A request by Simec to file out of time would have been futile and, in any case, was unnecessary to submit corrective information at the preliminary stage of the review.................................................................................................................. 14

    III.    Commerce's Assignment of a Punitive 66.7% Margin to Simec Was an Abuse of Discretion, Not Supported by Substantial Evidence and Not in Accordance with the Law. .......................................................................................................................... 15

CONCLUSION........................................................................................................ 15

PUBLIC DOCUMNET

# **TABLE OF AUTHORITIES**

**Cases**

*BMW of N. Am. LLC v. United States*,
   926 F.3d 1291, 1301 (Fed. Cir. 2019) ................................................................. 15

*Celik Halat ve Tel Sanayi A.S. v. United States*,
   483 F. Supp. 3d 1370, 1379 (Ct. Int'l Trade 2020) ............................................. 12

*Fischer S.A. Comercio, Industria and Agricultura v. United States*, 34 C.I.T. 334, 346, 700 F.
   Supp. 2d 1364, 1375 (Ct. Int'l Trade 2010)........................................................... 3

*Hyosung Corp. v. United States*,
   35 Ct. Int'l Trade 343 (Ct. Int'l Trade 2011) ...................................................... 13

*Inmax Sdn. Bhd. v. United States*,
   277 F. Supp. 3d 1367, 1374 (Ct. Int'l Trade 2017). ............................................ 15

*MacLean-Fogg Co. v. United States*,
   100 F. Supp. 3d 1349, 1355-56 (Ct. Int'l Trade 2015) ....................................... 12

*NTN Bearing Corp. v. United States*,
   74 F.3d 1204 (Fed. Cir. 1995)............................................................................... 11

*Shelter Forest Int'l Acquisition, Inc. v. United States*,
   497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) ......................................................... 3

*SKF USA Inc. v. United States,*
   263 F.3d 1369, 1382 (Fed. Cir. 2001)..................................................................... 2

*Stupp Corp. v. United States*,
   5 F.4th 1341 (Fed. Cir. 2021) .............................................................................. 13

*Timken U.S. Corporation and Timken Nadellager, GMBH v. United States*,
   434 F.3d 1345, 1353 (Fed. Cir. 2006)............................................................... 3, 11

*Yantai Timken Co. v. United States*,
   31 Ct. Int'l Trade 1741, 521 F. Supp. 2d 1356 (2007) ....................................... 13

**Other Administrative Materials**

*Tolling Deadlines for Antidumping and Countervailing Duty Administrative Reviews in Response
   to Operational Adjustments Due to COVID-19*, April 24, 2020.............................. 9

*Tolling Deadlines for Antidumping and Countervailing Duty Administrative Reviews*, July 21,
   2020......................................................................................................................... 9

## INTRODUCTION

Plaintiffs Grupo Simec S.A.B. de C.V.; Aceros Especiales Simec Tlaxcala, S.A. de C.V.; Compania Siderurgica del Pacifico S.A. de C.V.; Fundiciones de Acero Estructurales, S.A. de C.V.; Grupo Chant S.A.P.I. de C.V.; Operadora de Perfiles Sigosa, S.A. de C.V.; Orge S.A. de C.V.; Perfiles Comerciales Sigosa, S.A. de C.V.; RRLC S.A.P.I. de C.V.; Siderúrgicos Noroeste, S.A. de C.V.; Siderurgica del Occidente y Pacifico S.A. de C.V.; Simec International 6 S.A. de C.V.; Simec International, S.A. de C.V.; Simec International 7 S.A. de C.V.; and Simec International 9 S.A. de C.V. (collectively, "Simec") respectfully submit this Reply to the response briefs filed by Defendant United States ("the Government" or "Commerce") and Defendant-Intervenor Rebar Trade Action Coalition ("RTAC") (collectively, "Defendants") concerning Simec's Rule 56.2 Motion for Judgment on the administrative record. *See* Def.'s Resp. to Pls.' Mot. for J. on the Administrative R. (June 26, 2023) ECF No. 48 ("Def.'s Brief"); Def. Intervenor Rebar Trade Action Coalition's Resp. to Mot. for J. on the Agency R. (July 10, 2023), ECF No. 50 ("RTAC's Br."); Pl. Simec's R. 56.2 Mot. for J on the Agency R. and Mem. in Supp. (Apr. 26, 2023), ECF No. 43 ("Simec's Br.").

Simec's Motion for Judgment on the administrative record challenges the Final Results issued by the Department of Commerce ("Commerce") in the fifth administrative review of the antidumping order on steel concrete reinforcing bar from Mexico for the period November 1, 2019-October 31, 2020. Appx007781-007784 (Commerce's Final Results).

## ARGUMENT

I.   **Defendants' Response Briefs Provide No Coherent Explanation for Categorically Freezing Simec Out of the Administrative Review Almost Three Months Prior to Commerce Issuing Its Preliminary Results While Continuing to Accept Questionnaire Responses from Co-Mandatory Respondent Deacero During this Same Time Frame.**

The core of Simec's argument as set forth in its initial brief is that Commerce acted arbitrarily when it categorically refused to allow Simec to participate in the fact-gathering portion of the administrative review beyond September 7, 2021, almost three months before Commerce issued its Preliminary Results, while granting co-mandatory respondent Deacero repeated extensions of time to submit new factual information until November 10, 2021, just three weeks before publishing those Preliminary Results. *See, e.g.,* Simec's Br. at 2-3, 11-13, 22, 25-27, 34, 40; *see also SKF USA Inc. v. United States,* 263 F.3d 1369, 1382 (Fed. Cir. 2001)( "[A]n agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently."). In their respective briefs, neither Commerce nor RTAC provides a coherent response to Simec's core argument. Defendants' failure to meaningfully address this central issue is the classic dog that didn't bark.

The Government finally gets around to articulating the purported rationale for Commerce's disparate treatment of Simec and Deacero on page 15 of its response brief, where it falls back on the explanation previously offered in the Final Issues and Decision Memorandum:

> However, unlike Deacero, who cooperated fully and submitted timely responses, Commerce explained {in its IDM} that Simec 'required a significant amount of time to prepare its first supplemental questionnaire responses . . . {which reflects how} as the administrative process runs its course, the deadlines and requests for information from each respondent diverge and, as such, Commerce's deadlines for one respondent are not comparable with those of another.'   IDM at 18, Appx007730.

Def. Br. at 15.

This word soup simply states what Commerce did, without providing any real justification for Commerce's actions. Read closely, the above passage essentially asserts that because Commerce viewed Deacero's responses to its initial questionnaires to be more fulsome and useful than those of Simec, it was justified in categorically freezing Simec out of the review almost three

months before publishing its Preliminary Results and nine months before publication of its Final Results.

Simec, however, cited a plethora of cases in its initial brief in which this Court and the Federal Circuit Court of Appeals have held that respondents in an administrative review should be given broad leeway to add meaningful and corrective information to the record until publication of the Preliminary Results and even the Final Results. *See, e.g.,* Simec's Br. at 22-27; *Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388 (Ct. Int'l Trade 2021) (finding that while Commerce has some discretion to consider resources and limit an investigation, it abused discretion by precluding Shelter Forest's submission when acceptance of submission would yield a more accurate result); *Fischer S.A. Comercio, Industria and Agricultura v. United States*, 34 C.I.T. 334, 346, 700 F. Supp. 2d 1364, 1375 (Ct. Int'l Trade 2010) ("*Timken* and *NTN Bearing* both stress that, at the preliminary results stage, Commerce abuses its discretion where it refuses to let a respondent establish an accurate dumping margin by correcting mistakes in its response."); *Timken U.S. Corporation and Timken Nadellager, GMBH v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006) ("This court…has never discouraged the correction of errors at the preliminary result stage; we have only balanced the desire for accuracy in antidumping duty determinations with the need for finality at the final results stage.").

None of these cases permit Commerce to sidestep its obligation to calculate accurate margins nor ignore the interests of fairness if Commerce determines early in the process that it is simply annoyed with a respondent's early questionnaire responses. And yet, Commerce effectively ended Simec's participation in this review (from a fact-gathering standpoint) almost three months before publication of the Preliminary Results and nine months before publication of the Final Results, <u>all while continuing to accept co-respondent Deacero's factual input</u>. The incoherent

explanation offered by Commerce for doing so makes clear that it had no legitimate basis for ending Simec's participation in the review.

The hollowness of Commerce's explanation for its disparate treatment of Simec and Deacero can also be seen in the fact that Deacero was granted extensions of time to respond to Commerce on grounds almost identical to those for which Simec was denied an extension. For example:

- On September 8, 2021, contemporaneously with Commerce effectively ending Simec's participation in the fact-gathering portion of the review by flatly refusing any further time extensions, Deacero requested a one-week extension to respond to Commerce's first supplemental questionnaire. Appx006277-006279. Deacero indicated that the questionnaire was quite extensive: ("[f]or instance, question 8 covers over thirty-three questions. Similarly, questions 2, 5, 14, and 15 contains between three and four questions each") (emphasis added). Deacero added that gathering the information and documentation needed to respond to Commerce's requests was time consuming and difficult because it required participation from different areas of the company, as well as "separate legal entities with different systems and records," echoing the challenges faced by Simec. *Id.* Deacero indicated that additional time would be needed to translate the documents to English and for counsel to review the responses for accuracy and completeness. *Id.* Commerce granted Deacero's extension request while simultaneously denying Simec's contemporaneous extension request. Appx006282-006283.

- On September 24, 2021, over two weeks after Commerce effectively ended Simec's participation in the review, Deacero requested a two-week extension to respond to Commerce's second supplemental questionnaire, indicating that the questionnaire was

"quite extensive," <u>covering around 77 questions</u>. Appx006601-006603. Deacero explained that gathering the documentation needed to respond to Commerce's requests was time consuming because the documents were "generally maintained in different areas of the country," that "some documents and information must be gathered from separate entities with separate records," and that Deacero was further challenged by administrative constraints posed by the COVID-19 pandemic. *Id*. These grounds were extremely similar, if not identical, to the grounds previously offered by Simec to justify its extension requests. *See, e.g.,* Appx004959-00496. Commerce granted Deacero's extension request after having completely shut down Simec two weeks earlier. Appx006604-006605.

- On October 1, 2021, over three weeks after Commerce effectively ended Simec's participation in the review, Deacero requested a one-week extension to respond to Commerce's second supplemental questionnaire, noting that the circumstances described in Deacero's previous requests still existed. Appx006606-006608. Deacero again indicated that the second supplemental questionnaire was "quite extensive, <u>with around 77 questions</u>, and the sheer volume of information makes it difficult to meet the current deadline." *Id.* (emphasis added). Deacero further noted that it would need additional time to respond due to personnel and administrative constraints posed by the COIVD-19 pandemic, as well as the fact that not all of Deacero's systems could be accessed remotely, and "certain information must be collected from separate affiliated entities, which have their own resource and issues constraints." *Id.* All of these reasons echoed those given by Simec in its requests for extensions of time.  *See, e.g.,* Appx004959-00496. Commerce granted Deacero's extension (Appx006609-006610) after having denied Simec's.

5

- On October 13, 2021, over a month after Commerce effectively ended Simec's participation in the fact-gathering portion of the review, Deacero submitted yet another extension request just two days before the deadline to respond to its second supplemental questionnaire. Appx006614-006616. In that request, Deacero reiterated the issues described in its prior requests as well as unexpected internet connection issues associated with working remotely due to COVID-19. *Id.* Commerce granted this extension. Appx006617-006618.

In their briefs, Defendants harp on the fact that Commerce issued over 200 supplemental questions to Simec after Simec's initial questionnaire responses were received. *See, e.g.,* Def. Br. at 15, 30; RTAC Br. at 7, 12. Defendants imply that a large number of supplemental questions were needed because Simec's initial questionnaire responses were so grossly inadequate. *Id*. As the above recitation makes clear, however, between its first and second supplemental questionnaires, Commerce also issued *well over 100 supplemental questions to Deacero* and gave numerous extensions of time to Deacero to respond to those supplemental questions. While Commerce may have issued more supplemental questions to Simec than to Deacero, the number of supplemental questions issued to <u>both</u> respondents was extensive. Defendants' argument that Commerce was justified in ending Simec's participation in the review because Deacero had provided much more fulsome early responses is belied by this record.

In sum, Commerce's decision to cut Simec off at the knees so early in the review process was arbitrary and capricious.  Its overreaction was particularly unwarranted given the egregious obstacles confronted by Simec due to COVID-19, including the death of three members of its antidumping response team (as described in Simec's initial brief).

A. **Deacero was not "much further along" in the questionnaire process and, even if Deacero had been further along, that would not justify Commerce's disparate treatment of Simec.**

RTAC contends—without citing to any case or authority for support—that Commerce was entitled to treat Deacero more gently than Simec because Deacero was "much further along in the questionnaire process." RTAC Br. at 12. Not true. At the time Commerce rejected Simec's final extension request, Simec and Deacero had both been issued <u>one</u> set of supplemental questionnaires[1] pertaining to their respective initial questionnaire responses. *See* Appx004962-004972 (September 7, 2021, letter from Commerce to Deacero issuing Deacero's first questionnaire). Deacero was later issued a second supplemental questionnaire on September 22, 2021 (Appx006589-006600), which ultimately became due on October 18, 2021 (Appx006617-006618). Simec attempted to make its corrective October 18, 2021 filing (October 18 Filing) by the deadline for Deacero to submit its second supplemental questionnaire responses, effectively placing Deacero and Simec in the same position at that point in time. Appx006625-006628.

Nor were Deacero's submissions significantly more fulsome that Simec's responses. As noted above, Deacero, like Simec, had been issued an extensive first supplemental questionnaire designed to remedy perceived deficiencies in Deacero's initial responses. *See, e.g.,* Appx004962-004972. Commerce then continued to identify problems with Deacero's <u>initial</u> responses, prompting Commerce to issue a second and *third* supplemental questionnaire to Deacero containing even more follow-up questions. Appx006589-006600 (Deacero's second supplemental questionnaire), Appx007120-007122 (Deacero's third supplemental questionnaire). Importantly, Commerce's second supplemental questionnaire to Deacero notes that the inquiries contained

---

[1] While Simec was issued two separate supplemental questionnaires, those questionnaires were issued only a few days apart, and both related to Simec's initial questionnaire. Those questionnaires were therefore effectively two parts of a single supplemental questionnaire.

therein did <u>not</u> relate to the responses to Deacero's first supplemental questionnaire, but rather related to Deacero's <u>initial</u> questionnaire responses—*i.e.*, responses that were submitted "from March 11, 2021 to April 7, 2021." Appx006589-006600. Commerce's third supplemental questionnaire to Deacero also notes that the inquiries contained therein related both to Deacero's <u>initial</u> and supplemental responses—*i.e.*, responses "from March 11, 2021 to October 19, 2021." Appx007120-007122. Accordingly, Commerce's second and third supplemental questionnaires to Deacero were still addressed to continuing issues in Deacero's *initial* questionnaire responses. Thus, the argument that Deacero was providing responses to Commerce that were significantly better than those of Simec is unsupported by the record.

Finally, even if Deacero had been "much further along" in the questionnaire process, that would not have justified Commerce's decision to effectively terminate Simec's participation in the review almost three months before publication of the Preliminary Results and nine months before publication of the Final Results. Simec and Deacero were not involved in a footrace against one another or in any kind of zero-sum game. Both were entitled to due process. Neither Defendant has pointed to any case or authority indicating otherwise.

**B.      Simec was not given an "unusually long" period of time to respond to Commerce's requests and, even if it had been, that would not justify Commerce's disparate treatment of Simec in comparison with Deacero.**

Commerce argues—without citing to any record evidence, case law, or authority for support—that Simec was given an "unusually long" period of time to respond to Commerce's questionnaires. Def. Br. at 31. Simec's brief, on the other hand, does include citations to several cases in which Commerce issued extensions longer than those requested by Simec here. *See, e.g.,* Simec. Br. at n. 8.

Moreover, at the time Simec requested the review at issue, Commerce's published practice was to extend deadlines in administrative reviews to account for "operational adjustments due to COVID-19" by 110 days.[2] By contrast, Commerce in this review granted Deacero a total of 46[3] extra days to respond to its supplemental requests while granting Simec only 43 days.[4] Commerce's claim to have provided Simec with an "unusually long" period of time to respond therefore rings hollow when in this review (a) Commerce actually gave more response time to Deacero and, (b) in the review immediately prior, Commerce gave all respondents, as a result of Covid 19, more than <u>double</u> the amount of extra response time it gave to Simec (even though Simec continued to suffer from Covid's effects, as it documented).

In a similar vein, RTAC asserts that Simec has no grounds for complaint since Simec had more than enough time, seven months in total, to respond to Commerce's information requests RTAC Br. at 10-11, 14. RTAC's claim is credible only until one does some math. Commerce issued its initial questionnaire to Simec on February 8, 2021. Appx001246-001396. Simec

---

[2] *See Tolling Deadlines for Antidumping and Countervailing Duty Administrative Reviews in Response to Operational Adjustments Due to COVID-19*, April 24, 2020, ACCESS Barcode 3968192-01 & 3968293-01 (Extensions necessary in "response to operational adjustments due to COVID 19"); *Tolling Deadlines for Antidumping and Countervailing Duty Administrative Reviews*, July 21, 2020, ACCESS Barcodes 4004199-01 and 4004914-01 (Extension necessary due to "operational considerations due to COVID-19").

[3] Deacero's first supplemental questionnaire was issued by Commerce on September 7, 2021, and ultimately became due on September 20, 2021, giving Deacero 13 days to respond. Appx004962-004972; Appx006515-006588. Deacero's second supplemental questionnaire was issued on September 22, 2021, and ultimately became due on October 18, 2021, giving Deacero 26 days to respond. Appx006589-006600, Appx006629-007107. Deacero's third supplemental questionnaire was issued on November 3, 2021, and ultimately became due on November 10, 2021, giving Deacero 7 days to respond. Appx007120-007122, Appx007162-007199. Thus, in total, Deacero was given 46 days to respond to the supplemental inquiries.

[4] Simec's supplemental questionnaires were issued on July 28, 2021, and August 4, 2021, and last portion of those supplemental questionnaire became due on September 10, 2021, giving Simec a total of 43 days to respond (from July 28, 2021, to September 10, 2021).

responded to all portions of this questionnaire by the April 12, 2021, deadline.[5] *See* Appx001414-003525 (Simec's Section A Resp., submitted Mar. 8, 2021); Appx003787-004003 (Simec's Section B & C Resp., submitted Mar. 31, 2021); Appx004261-004265 (Simec's Appendix VI, submitted Apr. 5, 2021); Appx004266-004427 (Simec's Section D Resp., submitted Apr. 7, 2021); Appx004710-004727 (Simec's Section B Affiliates Sales Resp., submitted Apr. 12, 2021).

*Commerce then waited 3.5 months before it issued follow up questions to Simec* on July 27, 2021 ("ABC SQR") and August 4, 2021 ("A&D SQR"). *See* ABC SQR, Appx004873-004889, Appx084649-084665; A&D SQR, Appx004890-004903, Appx084666-084679. Including all extensions, Commerce allowed Simec only until September 10, 2021, to respond to these supplemental questions, a period of just 45 days. Thus, if one subtracts the 3.5 months that Simec spent waiting for Commerce issue supplemental questions, it is clear that Simec was not given seven months to respond to Commerce's questions—it was given <u>half</u> that.

## II. Commerce Abused its Discretion in Rejecting Simec's October 18th Filing.

### A. Simec's October 18th Filing was corrective information submitted well in advance of the Preliminary Results deadline.

Commerce and RTAC incorrectly assert that Simec's October 18th filing was properly rejected because it contained information that was not merely corrective but instead constituted new factual information. *See, e.g.,* Def. Br. at 14, 17; RTAC Br. at 11-12 As explained in Simec's Initial Brief, long-standing precedent clearly establishes that corrective information is not limited to the correction of clerical or other errors, but also includes corrections to remedy the omission

---

[5] It is worth noting that both Deacero and Simec were granted similar extensions of time to respond to Commerce's initial questionnaire, with the final portion of Deacero's questionnaire becoming due on April 8, 2021. *See* Deacero's Section A Resp. (Mar. 11, 2021), Appx003537-003694; Deacero's Section B & C Resp. (Mar. 31, 2021), Appx004004-004260; Deacero's Section D Resp. (Apr. 8, 2021), Appx004428-004691. As a result, Commerce granted *both* Deacero and Simec between 1-4 weeks of additional time to submit their responses to the initial questionnaires.

of information. *See, e.g.,* Simec Br. at 22-27.   Here, Simec's October 18th Filing included information further addressing seven questions in Commerce's requests, including information pertaining to downstream sales and CONNUM specific costs, as well as translations that were inadvertently stripped from Simec's previously submitted documents during filing. *See* Appx006625-006628 (Simec's October 18, 2021 Request to Accept letter, which explained the contents of the October 18th Filing). The Federal Circuit has repeatedly held that Commerce's refusal to accept corrective information submitted early in a review—even new information submitted to correct an omission—is an abuse of discretion and grounds for remand. *See, e.g., Timken U.S. Corporation and Timken Nadellager, GMBH v. United States*, 434 F.3d 1345 (Fed. Cir. 2006); *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995).

In their briefs, Defendants repeatedly criticize Simec because its final extension request would have pushed its response deadline only to September 20, 2021 and yet Simec did not attempt to make its corrective filing until October 18, 2021. *See, e.g.,* Def. Br. at 14, 17, 19, 39; RTAC Br. at 9-10. It makes no sense, however, for Defendants to complain that Simec failed to meet a deadline which Commerce had expressly rejected. Not surprisingly, neither Commerce nor RTAC is able to cite any authority for the proposition that a party must meet a submission deadline which Commerce has already rejected.

In any case, and as Simec noted in its case brief during the review, Simec submitted the October 18th Filing when it did because October 18, 2021, was the last day for Deacero to submit its responses to Commerce's second supplemental questionnaire. Commerce was therefore clearly able to absorb Simec's submission had it chosen to do so. In fact, Commerce continued to accept information from Deacero for an additional three weeks thereafter, until November 10, 2021.

**B.** **The statutory requirement of accuracy in determining antidumping margins outweighs Commerce's desire for finality and so mandates acceptance of Simec's October 18th Filing.**

The courts have repeatedly held that Commerce must consider accuracy and burden concerns in weighing whether to reject even untimely filings. *See, e.g., Celik Halat ve Tel Sanayi A.S. v. United States*, 483 F. Supp. 3d 1370, 1379 (Ct. Int'l Trade 2020) ("Commerce abuses its discretion when it rejects information that would not be burdensome to incorporate and which would increase the accuracy of the calculated subsidy rate"); *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355-56 (Ct. Int'l Trade 2015) ("Commerce's discretion is bounded at the outer limits by its obligation to carry out its statutory duty of determining dumping margins 'as accurately as possible'").

The contents of Simec's proposed October 18th Filing are not part of the record in this case because Commerce rejected that filing. *See* Appx007108-007109. Accordingly, arguments by Commerce and RTAC that the contents of the October 18th Filing would not have remedied the alleged deficiencies in Simec's responses are not based on the record and amount to nothing more than conjecture. *See, e.g.,* Def. Br. 14; RTAC Br. at 10, 13-14. In fact, the only record evidence regarding Simec's October 18th Filing is Simec's "Request to Accept" cover letter which, as noted above, indicates that the October 18th Filing included information that Commerce claims to have needed to calculate Simec's margin, including information related to CONNUM value and downstream sales. Appx006625-006628. Based on the record actually before this Court, the contents of the October 18th Filing as described in Simec's Request to Accept would have cured alleged deficiencies identified by Commerce.

Commerce contends that it could not have accepted Simec's October 18th Filing because of: (1) the number of alleged deficiencies in Simec's *initial* questionnaire responses and (2) the

time it took Commerce to compile Simec's supplemental questionnaires. Def. Br. at 18-19.
Neither of these reasons, however, has any bearing on the burden Commerce might have borne in
accepting Simec's corrective, October 18th Filing.[6] Commerce's argument as to its alleged burden
is undermined by its own acknowledgement in the Final IDM that "a large number of the
deficiencies" Commerce had asked about in the supplemental questionnaires "were simple errors
or explanations." Appx007724.

There are certainly instances where untimely information should be excluded, but this is
not one of them. *See, e.g., Yantai Timken Co. v. United States*, 31 Ct. Int'l Trade 1741, 521 F.
Supp. 2d 1356 (2007)(finding that Commerce properly rejected an untimely filing made nine
months after the deadline, after verification had already taken place, and after the preliminary
results had been issues); *Stupp Corp. v. United States*, 5 F.4th 1341 (Fed. Cir. 2021) (finding that
Commerce properly rejected new factual information contained in a respondent's case brief filed
more than three months after Commerce issued its preliminary results); *Hyosung Corp. v. United
States*, 35 Ct. Int'l Trade 343 (Ct. Int'l Trade 2011) (finding that Commerce properly rejected a
response submitted four months after the deadline, two months after the regulatory deadline, and
one week after publication of the preliminary results). Here, Simec's October 18th Filing was

---

[6] In its brief, the Government asserts that Simec's October 18th Filing would not have cured the
deficiencies in Simec's responses and, in support of that argument, states as follows: "As
Commerce explained in the final results, it 'has no basis for determining how to implement
corrections to the deficient data or that any such changes would resolve the discrepancies such that
they would result in an accurate dumping margin.' IDM at 16, Appx007728." Def. Br. at 14. That
statement from the Final IDM, however, was made in response to Simec's argument that
Commerce should have used the information on the record (*i.e.,* in Simec's responses) to calculate
a more accurate margin. It has nothing to do with Simec's October 18th Filing, which Commerce
rejected and is not part of the record. The Government should not be permitted to scramble the
contents of the Final IDM in order to submit a misleading, after the fact rationalization for its
rejection of Simec's October 18th Filing.

submitted almost three months before the Preliminary Results were issued, and nine months before the Final Results.

Accordingly, Commerce's rejection of Simec's October 18th Filing was an abuse of discretion.

### C. A request by Simec to file out of time would have been futile and, in any case, was unnecessary to submit corrective information at the preliminary stage of the review.

Finally, Commerce contends that Simec should have submitted a request to file out of time with regard to its October 18th Filing. Def. Br. at 17-18. As noted in Simec's Initial Brief, however, Simec's failure to do so was reasonable given Commerce's advance warning that it would not issue further extensions. Simec Br. at 21-22. In its Initial Brief, Simec points to *Celik Halat ve Tel Sanayi A.S. v. United States,* a case in which the court found a similar advance warning to constitute an abuse of discretion on the part of Commerce. 557 F. Supp. 3d 1348 (Ct. Int'l Trade 2022). Commerce attempts to split hairs and distinguish *Celik* by arguing that Commerce told Simec that it was "unlikely" to grant future extensions, while Commerce told the respondent in *Celik* that it "would not" grant future extensions. Def. Br. at 16-17.

The court in *Celik*, however, explained that Commerce's warning that it would not grant future requests was an abuse of discretion because it led respondent to the *reasonable belief* that such requests would be futile. *Celik Halat*, 557 F. Supp. 3d at 1359. The same is true here— regardless of Commerce's coy use of the term "unlikely," Simec reasonably believed that Commerce would not grant any more extensions to Simec after September 1, 2021—the date on which Commerce first issued Simec the warning to Simec. Appx004944. In fact, Simec's September 6, 2021, extension request even goes so far as to explain what Simec understood Commerce's warning to mean: "Commerce said don't expect further extensions. So, we are doing

14

so." Appx004954-004956. It was reasonable for Simec take Commerce's language to mean that no further extensions would be granted. Commerce's preemptive declaration therefore constituted an abuse of discretion.

**III. Commerce's Assignment of a Punitive 66.7% Margin to Simec Was an Abuse of Discretion, Not Supported by Substantial Evidence and Not in Accordance with the Law.**

In its response brief, the Government argues that Commerce is "allowed to apply facts available with an adverse inference to ensure cooperation, and therefore must ensure the selected rate is sufficiently adverse." Def. Br. at 36. Commerce, however, ignored its responsibility under section 1677e(d)(2) to fairly assess the circumstances of an alleged failure to cooperate before determining the Adverse Facts Available (AFA) rate. The statute makes clear that Commerce cannot automatically apply the most punitive AFA rates in all situations. *See, e.g., BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1301 (Fed. Cir. 2019) (holding that appropriate AFA rate depends on particular facts and reflects seriousness of non-cooperating party's conduct). Affirming Commerce's decision will allow Commerce to administer the antidumping duty law by "effectively lock{ing} out . . . subject merchandise through aggressive assignment of high, petition-based total AFA rates" rather than doing its proper job by "level{ing} the playing field and mitigate{ing} cross-border price discrimination*." Inmax Sdn. Bhd. v. United States*, 277 F. Supp. 3d 1367, 1374 (Ct. Int'l Trade 2017).

<u>CONCLUSION</u>

For the reasons set forth above and in Simec's Initial Brief, Simec respectfully requests that this Court enter an Order remanding this matter to Commerce with instructions to reconsider the Final Results by overturning its finding of adverse facts available as to Simec, giving Simec sufficient time to provide any information that is missing from the record and recalculating

Simec's dumping margin based on the data submitted by Simec. Simec further requests whatever relief on remand that the Court may deem just and proper.

Respectfully submitted,

<u>s/ *James L Rogers*</u>
James L. Rogers
Nelson Mullins Riley & Scarborough LLP
2 W. Washington Street, Suite 400
Greenville, SC 29601
(864) 373-2300

*Counsel for Grupo Simec*

August 9, 2023

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains 5,136 words on numbered pages (that is, excluding only the cover page, table of contents, table of authorities, signature block, and the present certificate).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

Dated: August 9, 2023                                   _s/James L Rogers_
                                                                             James L. Rogers
                                                                             *Counsel to Grupo Simec*