Slip Op. No. 24-52

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| GRUPO ACERERO S.A. de C.V.,<br>GRUPO SIMEC S.A.B. de C.V., et al.,<br><br>　　　　　*Plaintiffs*,<br><br>*and*<br><br>GERDAU CORSA, S.A.P.I de C.V.,<br><br>　　　　　*Plaintiff-Intervenor*,<br><br>v.<br><br>UNITED STATES,<br><br>　　　　　*Defendant*,<br><br>*and*<br><br>REBAR TRADE ACTION COALITION,<br><br>　　　　　*Defendant-Intervenor*. | Before: Stephen Alexander Vaden,<br>Judge<br><br>Consol. Court No. 1:22-cv-00202 (SAV) |

## <u>OPINION</u>

[Remanding the Final Results to Commerce for further proceedings consistent with this opinion.]

Dated: April 25, 2024

*James L. Rogers, Jr.*, Nelson, Mullins, Riley & Scarborough LLP, of Greenville, SC, for Plaintiff Grupo Simec S.A.B. de C.V., *et al.*

*Irene H. Chen*, VCL Law LLP, of Vienna, VA, for Consolidated Plaintiff Grupo Acerero S.A. de C.V. With her on the briefs was *Mark B. Lehnardt*, Law Offices of David L. Simon, PLLC, of Washington, DC.

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 2 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 2

*Craig A. Lewis*, Hogan Lovells US LLP, of Washington, DC, for Plaintiff-Intervenor Gerdau Corsa, S.A.P.I de C.V.  With him on the briefs were *Jonathan T. Stoel* and *Nicholas R. Sparks.*

*Kara M. Westercamp*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *L. Misha Preheim*, Assistant Director, Commercial Litigation Branch, and *Ian A. McInerney*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Maureen E. Thorson*, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor Rebar Trade Action Coalition.  With her on the brief were *Alan H. Price*, *John R. Shane*, *Jeffrey O. Frank*, and *Paul J. Coyle.*

**Vaden, Judge:** This case concerns an antidumping review conducted under the shadow of the 2019 novel coronavirus pandemic — a review during which three of Plaintiff Simec's employees died and a fourth was hospitalized and intubated.[1] Simec sought a deadline extension to submit information related to its downstream sales as part of a supplemental questionnaire.  The United States Department of Commerce (Commerce) denied the request, stating that "none of the reasons for extension requests … were *novel*."  IDM at 10, J.A. at 7,722, ECF No. 68 (emphasis added).  The resulting missing information led Commerce to draw an adverse

---

[1] The opinion refers to the Plaintiff singularly because Commerce treats the various affiliates as one entity for purposes of its review.  Issues and Decisions Memorandum accompanying the Final Results (IDM) at 1 n.2, J.A. at 7,713, ECF No. 68.  Simec is comprised of Grupo Simec S.A.B. de C.V.; Aceros Especiales Simec Tlaxcala, S.A. de C.V.; Compania Siderurgica del Pacifico S.A. de C.V.; Fundiciones de Acero Estructurales, S.A. de. C.V.; Grupo Chant S.A.P.I. de C.V.; Operadora de Perfiles Sigosa, S.A. de C.V.; Orge S.A. de C.V.; Perfiles Comerciales Sigosa, S.A. de C.V.; RRLC S.A.P.I. de C.V.; Siderúrgicos Noroeste, S.A. de C.V.; Siderurgica del Occidente y Pacifico S.A. de C.V.; Simec International 6 S.A. de C.V.; Simec International, S.A. de C.V.; Simec International 7 S.A. de C.V.; and Simec International 9 S.A. de C.V.  Pls.' Br. at 1, ECF No. 43.

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 3 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 3

inference using facts available to calculate Simec's dumping margin, which in turn impacted the rate for the companies not selected for review.

This case is an outlier, both in terms of its factual context and Commerce's response; but "[COVID-19] did not suspend the general principles of administrative law." *See Bonney Forge Corp. v. United States*, 46 CIT __, 560 F. Supp. 3d 1303, 1305 (2022). Those principles lead the Court to conclude that the denial of Simec's extension request was an abuse of discretion and that Commerce's explanation of why it denied the extension is unsupported by substantial evidence. The Court therefore **REMANDS** this case to Commerce with instructions.

## BACKGROUND

This case involves an appeal from the Final Results of the Fifth Administrative Review of the Antidumping Order on Steel Concrete Reinforcing Bar (rebar) from Mexico for the period from November 1, 2019 to October 31, 2020 (the Review Period). *See Steel Concrete Reinforcing Bar from Mexico* (Final Results), 87 Fed. Reg. 34,848 (Dep't of Com. Jun. 8, 2022), J.A. at 7,781, ECF No. 68; IDM, J.A. at 7,713, ECF No. 68; *Questionnaire Deficiencies Analysis* (Deficiencies Memo), J.A. at 91,515, ECF No. 67. More specifically, this case is about how Commerce treated two experienced respondents, Simec and Deacero S.A.P.I. de C.V. (Deacero), differently in the review conducted during the COVID-19 pandemic in Mexico.

In 2014, Commerce published an antidumping order covering rebar from Mexico (the Order). *Steel Concrete Reinforcing Bar from Mexico*, 79 Fed. Reg. 65,925 (Nov. 6, 2014). Simec and Deacero are two Mexican rebar producers. Simec

Case 1:22-cv-00202-SAV     Document 72     Filed 04/25/24     Page 4 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 4

participated in the original investigation as a voluntary respondent, and Deacero participated as a mandatory respondent.  *See Steel Concrete Reinforcing Bar from Mexico*, 79 Fed. Reg. 22,802 (Dep't of Com. Apr. 24, 2014).  Simec and Deacero participated as mandatory respondents in the 2014–15, 2016–17, and 2017–18 administrative reviews.  *See Steel Concrete Reinforcing Bar from Mexico*, 82 Fed. Reg. 27,233 n.2 (Dep't of Com. June 14, 2017) (2014–15 review); *Steel Concrete Reinforcing Bar from Mexico*, 84 Fed. Reg. 35,599 (Dep't of Com. July 24, 2019) (2016–17 review); *Steel Concrete Reinforcing Bar from Mexico*, 85 Fed. Reg. 71,053 (Dep't of Com. Nov. 6, 2020) (2017–18 review).  Deacero participated as a mandatory respondent in the 2018–19 review.  *See Steel Concrete Reinforcing Bar from Mexico*, 86 Fed. Reg. 50,527 (Dep't of Com. Sept. 9, 2021).  Simec participated in the 2018–19 review but was not a mandatory respondent.  *See id.*; *see also Steel Concrete Reinforcing Bar from Mexico* at 2, A-201-844, (Mar. 17, 2021), https://bit.ly/44brJ6q (last visited April 25, 2024). (Preliminary Decision Memo explaining that Simec requested review of its entries for the period of review, but Commerce limited the review to Deacero).

## I.     The Disputed Administrative Review

On November 3, 2020, Commerce published a notice of opportunity to request an administrative review.  *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review*, 86 Fed. Reg. 69,586 (Dep't of Com. Nov. 3, 2020).  Defendant-Intervenor Rebar Trade Action Coalition (the Coalition) petitioned Commerce for a review.  *Steel Concrete Reinforcing Bar from Mexico* (Request for Administrative Review), J.A. at 1,004, ECF

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 5 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 5

No. 68.  On January 6, 2021, Commerce published a notice of administrative review for the parties subject to the Order for 2019–20.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 511 (Dep't of Com. Jan. 6, 2021), J.A. at 1,040, ECF No. 68.  Commerce selected Simec and Deacero as mandatory respondents; and Consolidated Plaintiff Grupo Acerero and Plaintiff-Intervenor Gerdau Corsa remained subject to the review as non-selected companies.[2]  *See Steel Concrete Reinforcing Bar from Mexico* (Preliminary Results), 86 Fed. Reg. 68,632–33 (Dep't of Com. Dec. 3, 2021), J.A. at 7,269–70, ECF No. 68.

During the review, Mexico experienced a COVID-19 Delta Variant outbreak, which lagged a similar wave in the United States a few months prior.  *See* Oral Arg. Tr. at 22:6–12, ECF No. 71.  Both mandatory respondents faced Mexico-wide COVID-19 restrictions on travel and on-site work.  *See, e.g.*, Simec Second A&D Questionnaire Extension Req. (Aug. 16, 2021) at 1–2, J.A. at 4,910–11, ECF No. 68; Deacero Second Suppl. Questionnaire Extension Req. (Oct. 1, 2021) at 1–2, J.A. at 6,606–07, ECF No. 68.  These restrictions hampered the companies' coordination with employees in different departments and geographically dispersed affiliates.  *Id.*  They proved particularly burdensome during the information-gathering period before Commerce published its Preliminary Results.  *Id.*  Mexico also lacked the same level of access to COVID-19 vaccines as the United States.  Oral Arg. Tr. at 22:12–18, ECF No. 71.

---

[2] Gerdau Corsa is the successor-in-interest to Sidertul S.A. de C.V. (Sidertul) as of December 1, 2021.  Joint Mot. of Grupo Acerero and Gerdau Corsa at 1 n.1, ECF No. 44 (Joint Opening Br.).  Sidertul participated in the administrative review at issue here as a foreign producer but was not selected for individual examination.  *Id.*

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 6 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 6

As Mexico's Delta outbreak and COVID-19 restrictions continued, Commerce required the respondents to produce significant amounts of information, often from on-site records. Simec and Deacero both faced Mexico-wide COVID issues, but Simec also notified Commerce of the outbreak's tragic consequences — the deaths of three key accountants and the intubation of another. *See* Simec Third A&D Questionnaire Extension Req. (Aug. 16, 2021) at 1, J.A. at 4,914, ECF No. 68; *see also* Pls.' Br. at 38, ECF No. 43. Given the pandemic, both respondents requested multiple extensions from Commerce to produce the requested information.

## A. Simec's Initial and Supplemental Questionnaire Periods

On February 8, 2021, Commerce issued initial questionnaires to Deacero and Simec. Deacero Initial Questionnaire, J.A. at 1,094, ECF No. 68; Simec Initial Questionnaire, J.A. at 1,246, ECF No. 68. Simec experienced several challenges when responding to its questionnaire: (1) a key accountant died from COVID-19; (2) an at-risk pregnant employee had to be isolated; (3) some workers contracted COVID-19; and (4) a Texas winter storm affected power, heat, and internet at Simec's facilities. *See, e.g.*, Simec Initial Questionnaire Extension Req. (Mar. 19, 2021), J.A. at 3,707, ECF No. 68. Simec received three extensions ranging from one to four weeks. IDM at 7, J.A. at 7,719, ECF No. 68; Def.'s Br. at 4, ECF No. 47. It filed responses for sections A through D from March 8 through April 14, providing downstream sales data and analysis. Deficiencies Memo at 1, J.A. at 91,515, ECF No. 67.

After identifying deficiencies in Simec's responses, Commerce issued supplemental questionnaires for sections A through C on July 27, 2021, and sections

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 7 of 37

Consol. Court No. 1:22-cv-00202-SAV                                          Page 7

A and D on August 4, 2021. Simec A–C Questionnaire, J.A. at 4,873, ECF No. 68; Simec A&D Questionnaire, J.A. at 4,890, ECF No. 68.[3] Commerce initially provided Simec three weeks to respond to the A–C Questionnaire and one week to respond to the A&D Questionnaire. Simec A–C Questionnaire, J.A. at 4,873, ECF No. 68 (due August 17, 2021); Simec A&D Questionnaire, J.A. at 4,890, ECF No. 68 (due August 11, 2021). All parties agree that the supplemental questionnaires, which contained 275 questions over 29 pages, were extensive. Pls.' Br. at 6, ECF No. 43; *see also* Joint Opening Br. at 9–10, ECF No. 44; Def.'s Br. at 30, ECF No. 47 (quoting IDM at 27, J.A. at 7,739, ECF No. 68) (characterizing the Initial Questionnaire deficiencies as "so extensive that they resulted in over 200 supplemental questions"); Def.-Int.'s Br. at 2, ECF No. 54 (stating that Commerce identified many deficiencies, which yielded "more than two hundred supplemental questions spread over two supplemental questionnaires"). Deacero did not receive any supplemental questionnaires until September 7, 2021. Deacero First Suppl. Questionnaire, J.A. at 4,962, ECF No. 68 (due September 14, 2021).

---

[3] It is unclear whether the A–C and A&D Questionnaires constitute Simec's first and second supplemental questionnaires or are merely two parts of one supplemental questionnaire. *Compare* Simec First A&D Questionnaire Extension Req. (Aug. 16, 2021), J.A. at 4,908, ECF No. 68 (characterized as two questionnaires), *with* Pls.' Br. at 11, ECF No. 43 (contrasting Simec's situation with Deacero, which received more than one supplemental questionnaire). To the extent the distinction is relevant to assess Commerce's decision to issue multiple supplemental questionnaires to Deacero but not Simec, the Court notes that Simec's A–C and A&D Questionnaires came due at an earlier point in the review process than Deacero's second and third questionnaires. *Compare* Simec A&D Questionnaire Resp. (Sept. 10, 2021) at 1, J.A. at 86,713, ECF No. 66, *with* Deacero Second Suppl. Questionnaire Resp. (Oct. 19, 2021), J.A. at 6,629, ECF No. 68, *and* Deacero Third Suppl. Questionnaire Resp. (Nov. 10, 2021), J.A. at 7,162, ECF No. 68.

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 8 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 8

Simec once again requested multiple extensions to answer its supplemental questionnaires. Those requests and Commerce's responses show the cumulative and compounding effects of the pandemic on Simec and contrast with Deacero's treatment. On August 9, 2021, Simec requested a three-week extension for both supplemental questionnaires, citing the burden of answering them and Mexico's COVID-19 restrictions. Simec A–C/A&D Questionnaire Extension Req. (Aug. 9, 2021), J.A. at 4,904, ECF No. 68. Commerce granted the request in part but warned:

> Pursuant to 19 CFR 351.302(d)(1)(i) … any information submitted after the applicable deadline will be considered untimely filed and may be rejected. In such a case, we may have to resort to the use of facts available, as required by section 776(a)(2)(B) of the Tariff Act of 1930, as amended.

Simec A–C/A&D Extension Grant (Aug. 10, 2021), J.A. at 4,907, ECF No. 68. This boilerplate warning appeared on extension request responses to both Simec and Deacero. *See, e.g.*, Deacero First Suppl. Questionnaire Extension Grant (Sept. 8, 2021) at 1, J.A. at 6,280, ECF No. 68.

On August 16, Simec sent another A&D Questionnaire extension request in three letters that portrayed a quickly worsening situation. In the first letter, Simec stated that employees were "working flat out to answer Commerce's two … questionnaires" and "[f]or reasons … in [its] first and only extension request," it needed more time. Simec First A&D Questionnaire Extension Req. (Aug. 16, 2021) at 1, J.A. at 4,908, ECF No. 68. In its second letter, Simec added that (1) Mexico's Delta Variant outbreak was worsening; (2) Commerce extended its own deadlines by several months when the United States experienced its own COVID-19 outbreak in

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 9 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 9

2020; (3) Simec retained an experienced Indian attorney, but he was unable to travel because of COVID-19 restrictions in Mexico and India; and (4) Commerce had extended its preliminary decision deadline and had not yet issued any supplemental questionnaires to Deacero. Simec Second A&D Questionnaire Extension Req. (Aug. 16, 2021) at 1–2, J.A. at 4,910–11, ECF No. 68. In its third letter, Simec offered a startling update: Two of its accountants had died from COVID-19 and another was intubated. Simec Third A&D Questionnaire Extension Req. (Aug. 16, 2021) at 1, J.A. at 4,914, ECF No. 68. Simec now had to rely on less experienced accountants to answer the supplemental questionnaires. *Id.* Commerce granted the August 16 request in full. Simec A&D Extension Grant (Aug. 16, 2021), J.A. at 4,916, ECF No. 68.

On August 20, Simec sent another A–C Questionnaire extension request, citing the burden of the questionnaire and reiterating the reasons stated in its three August 16 letters. Simec A–C Questionnaire Extension Req. (Aug. 20, 2021), J.A. at 4,917, ECF No. 68. Simec also quoted its August 9 request observing that "the burden to answer [275 questions over 29 pages] is overwhelming." *Id.* at 2, J.A. at 4,918. Simec added that Mexico's Delta outbreak was "far worse than ever." *Id.* On August 23, 2021, Commerce partly granted the request. Simec A–C Extension Grant (Aug. 23, 2021), J.A. at 4,921, ECF No. 68.

On Saturday, August 28, Simec filed an extension request for both supplemental questionnaires but noted specific questions from the A&D questionnaire it believed required additional time. Simec A–C/A&D Questionnaire

Extension Req. (Aug. 28, 2021) at 1, J.A. at 4,926, ECF No. 68. Simec attached a copy of its August 20 extension request as background information and noted the impact of Mexico-wide COVID-19 restrictions on its ability to coordinate across companies. *Id.* at 1, J.A. at 4,926. It also responded to the Coalition's opposition to granting additional extensions, arguing that "Petitioners heartlessly fail to mention that two Simec individuals … recently <u>died</u> from [COVID-19] and a third is … <u>clinging to life</u> on a respirator." *Id.* at 2, J.A. at 4,927.

Before Commerce could respond, Simec filed another request on August 30. Simec A–C/A&D Questionnaire Extension Req. (Aug. 30, 2021), J.A. at 4,932, ECF No. 68. Simec sought similar deadlines as its previous request and additional time for the A–C questionnaire responses for affiliate and downstream sales. *Id.* at 1, J.A. at 4,932. Simec reiterated its challenges retrieving information across a diffuse company impacted by COVID-19. *Id.* On August 30, Commerce partly extended the deadline and granted Simec extra time to respond to the A–C questions for affiliate and downstream sales. Simec A–C Extension Grant (Aug. 30, 2021), J.A. at 4,939, ECF No. 68. Commerce also partly extended the A&D Questionnaire deadline. Simec A&D Extension Grant (Aug. 31, 2021), J.A. at 4,940, ECF No. 68.

On September 1, Simec filed another A–C Questionnaire extension request for the affiliate and downstream sales questions. Simec A–C Questionnaire Extension Req. (Sept. 1, 2021) at 1, J.A. at 4,941, ECF No. 68. Simec stated that the obstacles in its August 20 and August 30 requests persisted. *Id.* It also argued that Commerce should grant more time because "entry summaries and other documents are not

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 11 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 11

readily accessible[] given [COVID-19] restrictions." *Id.* Commerce granted a blanket extension but gave no extra time for the specific questions. Simec A–C Extension Grant (Sept. 1, 2021), J.A. at 4,944, ECF No. 68. Commerce also warned that "given the amount of time already granted … as well as the statutory and regulatory deadlines in this case and ongoing workloads, we are unlikely to be able to accommodate any additional extensions of time …." *Id.*

On September 2, Simec filed a similar one-week A&D Questionnaire extension request. Simec A&D Questionnaire Extension Req. (Sept. 2, 2021) at 1, J.A. at 4,945, ECF No. 68. Commerce granted two extra days but warned that it was unlikely to grant more extension requests. Simec A&D Extension Grant (Sept. 3, 2021), J.A. at 4,953, ECF No. 68.

In a September 6 letter to Commerce, Simec took stock of its situation. The A–C Questionnaire was due September 7, and the A&D Questionnaire was due September 9. Simec A–C Questionnaire Extension Req. (Sept. 6, 2021) at 1, J.A. at 4,954, ECF No. 68. Simec noted, "Commerce said don't expect further extensions[,]" so that the submissions would be "based on what has been possible to do to date." *Id.* Simec also reported that its employees were "sleep depriv[ed] for days and weeks" from trying to answer the questions and that the reasons detailed in the August 20, August 30, and September 2 extension requests justified a further extension. *Id.* Simec asked for a two-week extension, specifying that it needed extra time to submit affiliated company downstream sales and window period sales data.[4] *Id.* It noted

---

[4] "Window period" sales data involve situations where there are U.S. sales but no comparable home market sales during the same month(s). The "window period" refers to home market

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 12 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 12

that answering downstream sales questions required manually reviewing more than

800 invoices.  *Id.*  Commerce denied Simec's extension request the next day.  It found,

"The [September 6] request for additional time provides no detailed justification for

why the preparation of responses for questions 70-75 or the window period sales

requires additional time beyond the six weeks already allotted."    Simec A–C

Extension Denial (Sept. 7, 2021), J.A. at 4,958, ECF No. 68.

Later that day, at around 4:30 p.m., Simec responded.    Simec A–C

Questionnaire Extension Req. (Sept. 7, 2021) at 1, J.A. at 4,959, ECF No. 68.  Simec

stated that it now sought one extra week for questions 70 to 75.  *Id.*  It maintained

that its previous requests detailed its need but added details about how COVID-19

restrictions hampered its response.  *Id.*  The company also stated that it needed to

extract various rebar expenses from invoices that did not separate rebar data from

other products.  *Id.*  Commerce did not respond before the deadline so that Simec filed

public and confidential A–C Questionnaire responses on September 7 and September

8.  *See* Simec A–C Questionnaire Resp. (Sept. 8, 2021) at 1, J.A. at 4,973, ECF No. 68.

Under Commerce's regulations, Simec's unanswered September 7 extension request

automatically moved the deadline to September 8 at 8:30 a.m.  Simec A–C Extension

Denial (Sept. 9, 2021) at 1 n.1, J.A. at 6,282, ECF No. 68 (citing *Extension of Time*

*Limits*, 78 Fed. Reg. 57,790, 57,792 (Dep't of Com. Sept. 30, 2013)).  Simec nonetheless

---

sales made up to ninety days before or sixty days after the U.S. sales month that lacks
contemporaneous home market sales data.  *See Rebar Trade Action Coal. v. United States*,
45 CIT __, 503 F. Supp. 3d 1295, 1305 (CIT 2021).  Those window period sales prices may
then be compared to the U.S. sales prices to determine if dumping occurred.  *Id.*; *see* 19 C.F.R.
§ 351.414(f).

missed the deadline for questions 70 to 75 and failed to submit responses for those questions. *See* Simec A–C Questionnaire Resp. (Sept. 8, 2021) at 53, J.A. at 5,034, ECF No. 68; *see also* Simec Cover Letter (Oct. 18, 2021) at 1–4, J.A. at 6,625–28, ECF No. 68.

Commerce belatedly responded on September 9 and rejected Simec's extension request. Simec A–C Extension Denial (Sept. 9, 2021) at 1–2, J.A. at 6,282–83, ECF No. 68. Commerce noted that it granted three extra weeks to respond to the questionnaire and already denied an extension request for questions 70 through 75. *Id.* Commerce was left to analyze an incomplete record because the rest of Simec's downstream cost information never became part of the record.

On September 9, Simec submitted a final extension request for the A&D Questionnaire, which was due that same day. Simec A&D Questionnaire Extension Req. (Sept. 9, 2021) at 1–2, J.A. at 6,284–85, ECF No. 68. It noted issues with file corruption and challenges compiling and formatting data. *Id.* Simec also recounted many of the COVID-related issues that plagued the supplemental questionnaire period, including the lack of available COVID-19 vaccines in Mexico in comparison to the United States. *Id.* at 2 n.3, J.A. at 6,285. Commerce granted Simec's one-day extension request but reiterated that it was unlikely to grant more extensions. Simec A&D Extension Grant (Sept. 9, 2021), J.A. at 6,287, ECF No. 68. Simec timely filed its A&D responses on September 10. Simec A&D Questionnaire Resp. (Sept. 10, 2021) at 1, J.A. at 86,713, ECF No. 66. Although it would be nearly three months

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 14 of 37

Consol. Court No. 1:22-cv-00202-SAV                                      Page 14

until Commerce issued its Preliminary Results, Commerce did not seek or accept additional factual information from Simec.  Pls.' Reply Br. at 1–2, ECF No. 51.

### B. Deacero's Supplemental Questionnaires and Simec's October 18 Filing

Simec's role in the fact-gathering portion of the administrative review was finished, but Deacero's continued.  On September 7, 2021, Commerce issued its first supplemental questionnaire to Deacero for Section A of its Initial Questionnaire. Deacero First Suppl. Questionnaire, J.A. at 4,962, ECF No. 68.  Deacero later received multiple extensions across three supplemental questionnaires.

On September 8, Deacero requested a one-week extension because the questionnaire:  (1) requires a "significant amount of information from Deacero and other separate entities"; (2) involves participation from multiple departments; (3) involves "separate legal entities with different systems and records"; (4) requires coordination with personnel in charge of the information; (5) involves translating long documents; and (6) requires counsel to review the responses, follow up with questions, and format the narrative and exhibits for submission.  *See* Deacero First Suppl. Questionnaire Extension Req. (Sept. 8, 2021) at 1–2, J.A. at 6,277–78, ECF No. 68. Commerce granted this request in full.  Deacero First Suppl. Questionnaire Extension Grant (Sept. 8, 2021), J.A. at 6,280, ECF No. 68.  Deacero timely filed its First Supplemental Questionnaire.  Deacero First Suppl. Questionnaire Resp. (Sept. 20, 2021), J.A. at 6,515, ECF No. 68.

On September 22, Commerce issued Deacero's Second Supplemental Questionnaire comprised of seventy-seven questions.  Deacero Second Suppl.

Case 1:22-cv-00202-SAV     Document 72     Filed 04/25/24     Page 15 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 15

Questionnaire, J.A. at 6,589, ECF No. 68; Deacero Second Suppl. Questionnaire Extension Req. (Sept. 24, 2021) at 2, J.A. at 6,602, ECF No. 68.  Deacero requested a two-week extension on September 24 because:  (1) the questionnaire was "quite extensive"; (2) it needed to update its sales databases and submit voluminous supplemental documents; (3) the responses involve multiple departments; (4) relevant documents were maintained in separate departments and "separate entities with separate records"; (5) COVID-19 imposed "administrative constraints"; (6) most employees were still teleworking, which delayed contact, discussion, and obtaining documents; (7) Deacero was responding to a supplemental questionnaire in another review, which involved the same employees and resources; and (8) counsel needed to review the responses, follow up with questions, and format the narrative and exhibits for submission.  Deacero Second Suppl. Questionnaire Extension Req. (Sept. 24, 2021) at 1–2, J.A. at 6,601–02, ECF No. 68.  Commerce partly granted this request.  Deacero Second Suppl. Questionnaire Extension Grant (Sept. 24, 2021) at 1, J.A. at 6,604, ECF No. 68.

On October 1, Deacero requested another one-week extension, restating the reasons identified in its September 24 request and saying "despite Deacero's redoubled efforts and its staff working around the clock and through weekends," it needed more time.  Deacero Second Suppl. Questionnaire Extension Req. (Oct. 1, 2021) at 1, J.A. at 6,606, ECF No. 68.  Deacero also noted that COVID-19 teleworking limited employees' ability to access company systems and coordinate staff to gather, send, and review the requested information.  *Id.* at 1–2, J.A. at 6,606–07.  Commerce

granted this request. Deacero Second Suppl. Questionnaire Extension Grant (Oct. 1, 2021) at 1, J.A. at 6,609, ECF No. 68.

Deacero next submitted a four-day extension request. Deacero Second Suppl. Questionnaire Extension Req. (Oct. 13, 2021), J.A. at 6,614, ECF No. 68. Deacero reiterated that most employees were teleworking and that its resources were split between this questionnaire and responding to another questionnaire in a different review. *Id.* at 1–2, J.A. at 6,614–15. It did not mention COVID-19 in this request. *See id.* at 1–3, J.A. at 6,614–16. Deacero also claimed that: (1) it was experiencing internet connection issues, which hampered access to its systems, delayed attempts to retrieve and locate documents, and delayed updates for its sales databases; (2) counsel needed to review the information, follow up with questions, and format the documents for submission; and (3) "Deacero respectfully submits that this short extension will not adversely affect any other party or unduly hinder [Commerce's] ability to analyze the information within the statutory deadlines." *Id.* at 1–2, J.A. at 6,614–15. Commerce partly granted this request — setting the deadline for October 18, 2021. Deacero Second Suppl. Questionnaire Extension Grant (Oct. 13, 2021), J.A. at 6,617, ECF No. 68. Deacero timely filed its Second Supplemental Questionnaire. *See* Deacero Second Suppl. Questionnaire Resp. (Oct. 19, 2021), J.A. at 6,629, ECF No. 68.[5]

On October 18, as Deacero was filing its Second Supplemental Questionnaire, Simec attempted to file its missing responses to the A–C Suppl. Questionnaire (the

---

[5] Deacero dated its filing October 18; however, the filing is timestamped October 19.

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 17 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 17

October 18 Filing). *See* Rejected October 18 Filing, J.A. at 6,619–24, ECF No. 68 (blank placeholder sheets for the rejected data). Simec sought to include (1) information related to affiliated and downstream sales; (2) other information on cost allocation methodology; and (3) Spanish-to-English translations that had been inadvertently stripped during the original filing process. Pls.' Br. at 12, ECF No. 43 (citing Simec Cover Letter (Oct. 18, 2021) at 1–4, J.A. at 6,625–28, ECF No. 68). It requested that Commerce accept this filing because of challenges faced during the supplemental review period and because Commerce was still accepting information from Deacero. Simec Cover Letter (Oct. 18, 2021) at 1–4, J.A. at 6,625–28, ECF No. 68. At the time of Simec's attempted submission, Deacero had no further outstanding questionnaires. Had Commerce accepted the October 18 Filing, Simec and Deacero would have been on equal footing with their responses' timing. Commerce rejected the filing as untimely. Simec October 18 Filing Denial (Oct. 19, 2021), J.A. at 7,108, ECF No. 68 (citing 19 C.F.R. § 351.302(d)(1)(i)).

Despite having no time for further information from Simec, Commerce issued a third supplemental questionnaire to Deacero on November 3, 2021. *See* Deacero Third Suppl. Questionnaire at 1, J.A. at 7,120, ECF No. 68. Two days later, Deacero requested a two-day extension because it needed more time to manually search its records. Deacero Third Suppl. Questionnaire Extension Req. (Nov. 5, 2021) at 1, J.A. at 7,123, ECF No. 68. It again asserted that this extension would not adversely affect any other party or hinder Commerce's ability to analyze the information within its statutory deadlines. *Id.* at 2, J.A. at 7,124. Commerce granted the request. Deacero

Third Suppl. Questionnaire Extension Grant (Nov. 5, 2021) at 1, J.A. at 7,126, ECF No. 68. Deacero timely filed its Third Supplemental Questionnaire. Deacero Third Suppl. Questionnaire Resp. (Nov. 10, 2021), J.A. at 7,162, ECF No. 68.

### C. Commerce's Preliminary and Final Results

Commerce published its Preliminary Results on December 3, 2021. Preliminary Results, 86 Fed. Reg. 68,632, J.A. at 7,269, ECF No. 68. It applied facts available with an adverse inference against Simec because Simec "failed to provide any responses to the questions related to downstream sales" and the responses the company did submit "fail[ed] to provide information Commerce requested, [incorrectly] stated that various errors or discrepancies had been corrected … and provided supporting documentation which indicated that certain reported data were incorrect." Issues and Decisions Memorandum accompanying the Preliminary Results (PDM) at 5, J.A. at 7,222, ECF No. 68. Commerce assigned Simec a dumping margin of 66.70 percent, which was the same margin assigned to Simec during the original investigation. Def.'s Br. at 6, ECF No. 47 (citing PDM at 9, J.A. at 7,226, ECF No. 68); *see also Steel Concrete Reinforcing Bar from Mexico* (Final Determination), 79 Fed. Reg. 54,967 (Dep't of Com. Sept. 15, 2014). Commerce calculated a zero percent rate for Deacero. PDM at 10, J.A. at 7,227, ECF No. 68. It also calculated the rate for the companies not selected for individual examination by averaging Simec's rate and Deacero's rate. *Id.* (citing 19 U.S.C. § 1673d(c)(5)(B)). That simple average resulted in a 33.35 percent dumping margin for non-selected companies with transactions during the review period. Def.'s Br. at 7, ECF No. 47.

Commerce published its Final Results on June 8, 2022. *See generally* IDM, J.A. at 7,713, ECF No. 68. Commerce continued to apply facts available with an adverse inference against Simec. *See id.* at 1, J.A. at 7,713. All dumping margins remained the same. *Id.* at 41, J.A. at 7,753. It concurrently published the public version of its Deficiencies Memorandum, which details deficiencies in Simec's submissions.[6] Deficiencies Memo, J.A. at 7,817, ECF No. 68.

## II.    The Present Dispute

On August 8, 2022, Simec brought this action under § 516A of the Tariff Act of 1930, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii), challenging Commerce's Final Results. Compl. ¶¶ 2, 8–11, ECF No. 8. The Coalition intervened as Defendant-Intervenor. Order Granting Intervention, ECF No. 16. Grupo Acerero filed a separate action challenging the Final Results. Compl., *Grupo Acerero S.A. de C.V. v. United States*, No. 22-230 (CIT Aug. 26, 2022), ECF No. 8. In addition to the issues Simec raises, Grupo Acerero challenges the 33.35 percent non-selected company rate as unsupported by substantial evidence. *Id.* ¶ 28. The Coalition intervened as a Defendant-Intervenor in that case as well. Order Granting Intervention, *Grupo Acerero S.A. de C.V. v. United States*, No. 22-230 (CIT Sept.6 2022), ECF No. 16. Gerdau Corsa joined as Plaintiff-Intervenor on September 23, 2022. Order Granting Intervention, *Grupo Acerero S.A. de C.V. v. United States*, No.

---

[6] Commerce initially failed to place its Deficiencies Memo on the record because "a case analyst unfamiliar with the administrative review was covering for the assigned case analyst, who was on leave, and inadvertently failed to file the public and confidential versions of the Deficiencies Memorandum …." Def.'s Mot. to Correct the R. at 2, ECF No. 28. The Court took briefing on the issue and ultimately allowed Commerce to supplement the administrative record with the confidential Deficiencies Memo. ECF No. 39.

22-230 (CIT Sept. 23, 2022), ECF No. 23.  After an in-person status conference on October 26, 2022, the Court consolidated both actions with Simec's action designated as the lead case.  Consolidation Scheduling Order, ECF No. 27.

In their briefs, the parties focus on (1) whether Commerce abused its discretion in denying Simec's extension requests and rejecting the October 18 Filing, (2) Commerce's drawing an adverse inference, and (3) Commerce's use of simple averaging to calculate the non-selected company rate.  In response, Commerce broadly defends its use of total adverse facts available for Simec and use of a simple average for the non-selected company rate.  Def.'s Br. at 12–46, ECF No. 47.  It claims it did not abuse its discretion in denying the extension requests and rejecting the October 18 Filing.  *Id.* at 12–19.  Commerce asserts that adverse inferences were appropriate because Simec failed to cooperate to the best of its ability.  *Id.* at 30–39.

In its reply brief, Simec focuses its argument on Commerce's disparate treatment of Simec vis-à-vis Deacero, observing that Commerce cut Simec out of the fact gathering portion two months before Deacero's submissions ended.  Pls.' Reply at 1–10, ECF No. 51.  Simec also reiterates its arguments that Commerce abused its discretion in rejecting the October 18 Filing and assigning Simec a 66.70 percent dumping margin.  *Id.* at 10–15.  In their joint reply brief, Grupo Acerero and Gerdau Corsa also argue that the non-selected company rate did not reasonably reflect the potential dumping margins for the non-selected respondents.  Joint Reply Br. at 12–23, ECF No. 52.

The Court held oral argument on December 15, 2023. ECF No. 64. Simec's counsel represented to the Court — and Commerce did not find in its decision to the contrary — that the documents Simec sought to file on October 18 were the same as Simec would have filed had Commerce granted its September 7 extension request. Oral Arg Tr. 19:20–25, ECF No. 71 (The Court: "[D]o I hear you representing to the Court that essentially what you did on October 18th was attempt to give [Commerce] … the same thing that they would have received in the first ten days of September had they given you a couple of additional days?" Mr. Rogers: "Yes, Your Honor."). Simec's counsel also represented that Simec chose to submit its information on October 18 to coincide with Deacero's Second Supplemental Questionnaire deadline, which at the time was Deacero's last opportunity to submit information before the Preliminary Results. *Id.* at 19:25–20:13. All parties agreed that, should the Court remand on the issue of Commerce's failure to grant an extension of time to Simec, it should stay any consideration of the non-selected company rate until the remand determination. *Id.* at 83:12–19, 94:2–7, 98:13–20. Any change in Simec's rate would necessarily affect the non-selected company rate. *Id.* at 94:7–11 (Defendant's counsel noting that a change in Simec's rate would "necessarily flow [and affect] the non-selected rate …."); *id.* at 98:20–22 (Coalition's counsel agreeing that, if the case were remanded, the non-selected company rate issue "could go away depending on what happens on remand.").

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 22 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 22

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction under 28 U.S.C. § 1581, which grants authority to review challenges to antidumping order final determinations. The Court must set aside any of Commerce's "determination[s], finding[s], or conclusion[s]" found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law …." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also* 28 U.S.C. § 2640(b) (noting that § 516A civil actions are reviewed under 19 U.S.C. § 1516a(b)). "[T]he question is not whether the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce's conclusion." *New Am. Keg v. United States*, 45 CIT __, 2021 Ct. Intl. Trade LEXIS 34, at *15. When reviewing agency determinations, findings, or conclusions for substantial evidence, the Court assesses if the agency's action is reasonable given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). The Federal Circuit describes "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Commerce has discretion to set and enforce deadlines in administrative reviews. *See Dongtai Peak Honey Indus. Co., Ltd. v. United States*, 777 F.3d 1343, 1352 (Fed. Cir. 2015); *see also* 19 C.F.R. § 351.302 (extension of time limits). But that

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 23 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 23

discretion is not absolute. *See Grobest & I-Mei Indus. (Viet.) Co., Ltd. v. United States*, 36 CIT 98, 122 (2012) (citing *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995)). Commerce's exercise of discretion is reviewed under the default standard of the Administrative Procedure Act. *See SolarWorld Americas, Inc. v. United States*, 962 F.3d 1351, 1359 n.2 (Fed. Cir. 2020) (explaining that, in cases reviewed under 28 U.S.C. § 2640(b), section 706 review applies "since no law provides otherwise"); *Oman Fasteners, LLC v. United States*, 47 CIT __, 2023 Ct. Intl. Trade LEXIS 28, at *10 ("Commerce's exercise of discretion in § 516A cases is subject to the default standard of the Administrative Procedure Act."). This standard allows the Court to "set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## DISCUSSION

## I.    SUMMARY

Commerce abused its discretion when it cut Simec out of the fact-gathering portion of the review nearly three months before publishing the Preliminary Results by citing the need to meet statutory deadlines. Meanwhile, it granted Deacero multiple extension requests over three supplemental questionnaires for nearly two more months. Both companies cited COVID-related difficulties and submitted less-than-perfect initial questionnaires — requiring triple-digit numbers of supplemental questions for both. However, only Simec experienced three deaths and an intubation among the accountants responsible for responding to Commerce's questionnaires.

Case 1:22-cv-00202-SAV   Document 72   Filed 04/25/24   Page 24 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 24

Only Simec noted that its experienced counsel, who had assisted in previous reviews, could not travel because of COVID-19 restrictions.  Commerce failed to appreciate the severe disruptions COVID-19 caused in Simec's ability to respond while crediting Deacero's more generic claims of difficulty.  That the agency's fact-finding process lasted nearly three months after it told Simec no additional time was available undermines any finality justification for Commerce's actions.

Commerce's explanation also fails to properly characterize Simec's situation. The Issues and Decisions Memorandum is bereft of discussion of Simec's specific COVID-19 challenges and fails to consider how those challenges detract from Commerce's conclusion that none of the reasons Simec presented for one additional extension were "novel."  Their absence mars the conclusion as unsupported by substantial evidence.  Because Commerce abused its discretion and its conclusion is unsupported by substantial evidence, the Court remands the case to Commerce to reopen the record and allow Simec to add the information it would have included had Commerce granted its final A–C Supplemental Questionnaire extension request.

Commerce's use of facts available, drawing of adverse inferences, and use of a simple average to determine the non-examined company rate all flow from Commerce's unjustified decision to reject Simec's final extension request.  Because Commerce's final determination may change after it accepts Simec's data, it would be inappropriate for the Court to decide Plaintiffs' remaining claims.  On remand, Commerce should analyze the information in Simec's October 18 Filing and any additional information it may request in its discretion to calculate (1) a new dumping

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 25 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 25

margin for Simec and (2) a new non-selected company rate.  The agency remains free to use facts available to fill any gaps remaining after accepting Simec's October 18 Filing and may draw adverse inferences if legally appropriate.

## II.    Commerce's Disparate Treatment of Simec Was an Abuse of Discretion

Commerce abused its discretion when it denied Simec's September 7 extension request.  It cut Simec out of the fact-gathering portion of the review well before releasing the Preliminary Results while continuing to issue Deacero multiple supplemental questionnaires and time extensions.  *Cf. SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996)) ("[I]t is well-established that 'an agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently.'") (second alteration in original).  Although Simec and Deacero both proffered COVID-19 restrictions as justification for their extension requests, Simec faced more acute challenges.    Nonetheless, Commerce denied Simec's September 7 extension request, continued to request and accept information from Deacero until November 10, and did not publish its Preliminary Results until December 3.  *Compare* Simec A–C Questionnaire Extension Denial (Sept. 9, 2021), J.A. at 6,282, ECF No. 68, *and* Deacero Third Suppl. Questionnaire Resp. (Nov. 10, 2021), J.A. at 7,162, ECF No. 68, *with* Preliminary Results, 86 Fed. Reg. 68,632, J.A. at 7,269, ECF No. 68.  Commerce's differential treatment was an abuse of discretion.

Commerce issued detailed questionnaires for both Simec and Deacero. *Compare* Simec Initial Questionnaire, J.A. at 1,246, ECF No. 68, *with* Deacero Initial

Questionnaire, J.A. at 1,094, ECF No. 68.  Both companies' responses required extensive supplementation.  *See* Simec A–C Questionnaire Extension Req. (Aug. 20, 2021) at 1–2, J.A. at 4,917–18, ECF No. 68 (noting Simec received 275 supplemental questions); Oral Arg. Tr. at 15:1–15, 37:17–18, ECF No. 71 (noting Deacero received about 100 supplemental questions).  Both filed multiple extension requests during the supplemental questionnaire period, citing COVID-19 restrictions and the questionnaires' extensiveness as their primary challenges.  *See*, *e.g.*, Simec A–C/A&D Questionnaire Extension Req. (Aug. 9, 2021) at 1, J.A. at 4,904, ECF No. 68 (stating that it was a "huge" burden to answer both questionnaires and citing ongoing COVID-19 restrictions); Deacero Second Suppl. Questionnaire Extension Req. (Sept. 24, 2021) at 1–2, J.A. at 6,601–02, ECF No. 68 (stating the questionnaire is "quite extensive" and COVID-19 imposed "administrative constraints").

However, Simec faced far more severe hurdles.  Three of its key employees died from COVID-19 — one during the initial questionnaire period and two during the supplemental questionnaire period.  Pls.' Br. at 5, ECF No. 43.  Another employee needed intubation.  Simec Third A&D Questionnaire Extension Req. (Aug. 16, 2021), J.A. at 4,914, ECF No. 68.  Simec attempted to bring in experienced outside counsel to assist, but Mexican and Indian COVID-19 restrictions blocked these efforts.  Simec Second A&D Questionnaire Extension Req. (Aug. 16, 2021) at 2, J.A. at 4,911, ECF No. 68.  The record reflects that Simec faced uniquely severe fallout from COVID-19.  Indeed, Commerce conceded at oral argument that it was unaware of any other COVID-era respondent that experienced the level of hardship Simec did.  Oral Arg.

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 27 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 27

Tr. at 29:15–19, ECF No. 71 (The Court: "[A]re you aware of any other administrative review engaged in during this time period in which multiple key employees died during the administrative review?" Ms. Westercamp: "I am not, Your Honor.").

Deacero, by contrast, contended with the general COVID-19 hurdles multiple pandemic-era respondents faced. *See, e.g.*, Deacero Second Suppl. Questionnaire Extension Req. (Sept. 24, 2021) at 2, J.A. at 6,602, ECF No. 68 (noting that COVID-19 imposed "administrative constraints" and citing general COVID-19 issues such as telework requirements). Deacero suffered no deaths or hospitalizations among key employees. Instead, its extension requests (1) made general assertions of continued difficulty because of Mexican COVID-19 restrictions; (2) cited issues that Simec also raised, such as having a geographically dispersed company structure and the breadth of the questionnaires; and (3) raised issues that were comparatively less severe than Simec's. *See, e.g.*, Deacero Second Suppl. Questionnaire Extension Req. (Oct. 13, 2021) at 1–3, J.A. at 6,614–16, ECF No. 68 (noting unexpected computer connection issues). In some extension requests, Deacero did not mention COVID-19 at all. *See id.* Nevertheless, Commerce continued to grant Deacero's requests well after it denied Simec's September 7 extension request on the grounds that time was of the essence.

Commerce faced two respondents in this review. One confronted calamitous consequences because of COVID-19. The other experienced disruptions akin to those of any respondent in the pandemic era. Commerce chose to reward Deacero's more generic descriptions of difficulty with extensions while downplaying the much more

severe difficulties Simec faced.  Citing time constraints, Commerce shut Simec down two months before it ended its examination of Deacero.  IDM at 12, J.A. at 7,724, ECF No. 68 (citing the "need to ensure sufficient time for review and possible further supplemental questionnaires" as justification to deny the last extension request).

Commerce and the Coalition offer several reasons for why the agency did not abuse its discretion when it denied Simec's September 7 extension request.  Their arguments focus on the timeline of events and the supposed divergence between Simec's and Deacero's respective reviews.  Def.'s Br. at 15, 18–19, 31, 34, ECF No. 47; *see also* Def-Int.'s Br. at 8, 10–12, ECF No. 54.  These arguments are unavailing.

Commerce and the Coalition first argue that Simec attempted to file its information on October 18 — well past the September 16 deadline Simec originally requested in its September 7 extension request.  *See* Def.'s Br. at 5, 31, ECF No. 47 (quoting IDM at 28, J.A. at 7,740, ECF No. 68); *see also* Simec A–C Questionnaire Extension Req. (Sept. 7, 2021), J.A. at 4,959, ECF No. 68.  They also assert that Simec received nearly all the time it sought in prior extension requests and still did not submit timely responses.  *See* Oral Arg. Tr. at 50:22–51:2, ECF No. 71 (Coalition's counsel arguing that Simec eventually received the time it originally requested after notifying Commerce of employee deaths).

It is true that Simec did not meet its proposed September 16 deadline.  However, Commerce rejected that deadline, stating "the deadline for the submission … *was* 8:30 a.m., September 8, 2021[,]" and "we previously denied [Simec's] request for an extension … [and] we are similarly denying [this] requested extension."  Simec

A–C Questionnaire Extension Denial (Sept. 9, 2021) at 1–2, J.A. at 6,282–83, ECF No. 68 (emphasis added). Although it would have been prudent for Simec to try to submit the missing information at the first opportunity, Commerce can hardly fault Simec for failing to abide by a deadline the agency rejected. *Cf. Celik Halat ve Tel Sanayi A.S. v. United States*, 46 CIT __, 557 F. Supp. 3d 1348, 1359 (2022) ("While this court agrees that it would have been prudent for Celik Halat's representative to file an extension request, timely or otherwise, the court also notes the existence of record evidence to support a reasonable belief … that both of these efforts would have been futile.").

The Coalition and Commerce attempt to explain the refusal to grant Simec additional time by citing the need for finality and the burden of accepting late-filed information. *See* Def.'s Br. at 18–19, ECF No. 47; Def-Int.'s Br. at 9–10, ECF No. 54; *see also* Oral Arg. Tr. at 51:23–25, ECF No. 71 ("[E]veryone seems to agree … the balance that is before the Court [is] accuracy versus finality."). However, Commerce's interest in finality nearly three months before releasing the Preliminary Results was not just at a nadir; it was nearly zero. *See Timken United States Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006) ("This court … has never discouraged the correction of errors at the preliminary result stage; we have only balanced the desire for accuracy in antidumping duty determinations with the need for finality at the final results stage."). That interest in finality was even lower in early September, when Commerce rejected Simec's extension request, than in mid-October, when Commerce rejected Simec's final attempted filing.

Commerce's concern with finality rings hollow when one considers it would be nearly three months and three supplemental questionnaires for Deacero before Commerce issued the Preliminary Results. Neither Simec nor Deacero submitted stellar initial questionnaires. Both necessitated multiple rounds of supplementation amounting to triple-digit numbers of additional queries. But Commerce opted to cut Simec out of the remaining fact-gathering portion while continuing to allow Deacero additional extensions. *Compare* Deacero Second Suppl. Questionnaire Extension Req. (Oct. 13, 2021) at 2, J.A. at 6,615, ECF No. 68 ("Deacero respectfully submits that this short extension will not adversely affect any other party or unduly hinder [Commerce's] ability to analyze the information within the statutory deadlines."), *and* Deacero Second Suppl. Questionnaire Extension Grant (Oct. 13, 2021), J.A. at 6,617, ECF No. 68, *with* IDM at 12, J.A. at 7,724, ECF No. 68 (citing the "need to ensure sufficient time for review and possible further supplemental questionnaires" as justification to deny Simec's last extension request). Deacero answered over one hundred supplemental questions *after* Commerce had ended Simec's role in the fact gathering process. Pls.' Reply at 6, ECF No. 51. Commerce attempted to explain its wildly differential treatment:

> Deacero was farther along in the administrative process than Grupo Simec because of the significant amount of time that it took Commerce to review Grupo Simec's initial questionnaire responses and because Commerce had granted Grupo Simec a significant amount of time to prepare its first supplemental questionnaire responses. More importantly, though, as the administrative process runs its course, the deadlines and requests for information from each respondent diverge, and, as such, Commerce's deadlines for one respondent are not comparable with those of another, nor is the submission of untimely-

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 31 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 31

> filed information justifiable simply because we accept information from
> another party on that date.

IDM at 18, J.A. at 7,730, ECF No. 68.

This statement does little to clarify Commerce's actions. Though Simec's and Deacero's deadlines might diverge during the supplemental questionnaire process, there is no escaping their common deadline — the Preliminary Results. Commerce ended Simec's participation in the review as Deacero continued to submit a significant amount of information for two more months. As the Consolidated Plaintiffs correctly note, "[T]he likely burden on Commerce to receive responses to six questions … five to seven days after receiving responses to 269 other questions was comparatively insignificant" — particularly when Commerce made time over the next couple of months to issue and review more than one hundred queries from Deacero. Joint Opening Br. at 27, ECF No. 44.

By Commerce's own admission, no respondent was more affected by the COVID-19 pandemic than Simec. Meanwhile, Deacero experienced the same frustrations as every other pandemic-era respondent going through the administrative review process. Commerce credited Deacero's general complaints and granted sufficient time for it to submit the required information. Conversely, the agency downplayed the rising death toll at Simec, grew frustrated, and prematurely ended Simec's ability to respond to Commerce's questionnaires. Because Commerce's actions were arbitrary, its decision to reject Simec's request for an extension may not stand.

Simec asserts that (1) it could have timely submitted its missing information had Commerce granted it one final extension; (2) its attempted October 18 Filing was the same information that it would have submitted had Commerce granted one final extension; and (3) it chose to submit information on October 18 because that date coincided with Deacero's second supplemental questionnaire deadline — the then-final date that Commerce would take factual evidence from either respondent. *See* Oral Arg. Tr. at 18:10–18, 19:20–20:13, ECF No. 71. In other words, Simec sought to be on equal footing with Deacero at the end of the supplemental questionnaire period. Commerce did not refute these representations. *See* IDM at 20, J.A. at 7,732, ECF No. 68 ("Simec elected to ignore Commerce's established supplemental questionnaire deadlines and then *later attempted to submit the information that it failed to submit in a timely manner ….*") (emphasis added); *see also* Def.'s Br. at 5, ECF No. 47 ("[O]n October 18, *40 days* after the September 7 deadline and automatically extended September 8 8:30 a.m. deadline, Simec filed a submission containing the information Commerce had requested in the A-C supplemental questionnaire."). The Court therefore **REMANDS** the case to Commerce to reopen the record and accept the October 18 Filing.

### III.  Commerce's Conclusions Are Unsupported by Substantial Evidence

Were it not an abuse of discretion, Commerce's decision to reject Simec's request for additional time would also fail for not being supported by substantial evidence. *See Universal Camera Corp.*, 340 U.S. at 488 ("The substantiality of evidence must take into account whatever in the record fairly detracts from its

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 33 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 33

weight."). Commerce claimed that "none of the reasons for [Simec's] extension requests … were novel." *See* IDM at 10, J.A. at 7,722, ECF No. 68. Three dead accountants, a fourth hospitalized, and an outside counsel unable to help because of pandemic restrictions are the very definition of "novel." Commerce's attempt to say otherwise does not find sufficient evidentiary support in the record.

Simec faced severe challenges in both the initial and supplemental questionnaire periods. While answering the initial questionnaire, Simec notified Commerce that its workers contracted COVID-19, an at-risk pregnant worker needed to be isolated, and a key accountant died from COVID-19. *See, e.g.*, Simec Initial Questionnaire Extension Req. (Mar. 19, 2021) at 1, J.A. at 3,707, ECF No. 68. It also notified Commerce that a record-setting Texas winter storm affected power, heat, and internet at Simec's facilities. *Id.*

Things did not get better during the supplemental questionnaire period. Simec's COVID-19 challenges persisted and compounded. In early August, Simec requested extensions for both supplemental questionnaires, explaining Mexican COVID-19 restrictions hindered coordination and on-site work across multiple locations. Simec A–C/A&D Questionnaire Extension Req. (Aug. 9, 2021), at 1, J.A. at 4,904, ECF No. 68. On August 16, Simec's situation worsened. In addition to citing ongoing restrictions, Simec informed Commerce that two more accountants died from COVID-19; another accountant was intubated; and Simec's experienced outside counsel, who was "extremely helpful" in a prior administrative review, could not travel to Mexico because of COVID-19 restrictions. Simec A&D Extension Reqs. (Aug.

16, 2021), J.A. at 4,911, 4,914, ECF No. 68.    From mid-August to the rejected September 7 extension request, Simec reiterated these challenges and advised Commerce of new hurdles. *See, e.g.*, Simec A–C Questionnaire Extension Req. (Sept. 6, 2021), J.A. at 4,954, ECF No. 68.

Commerce claims that it properly credited Simec's COVID-19 challenges when considering its extension requests.  Def.'s Br. at 31–32, ECF No. 47.  It characterized Simec's difficulties this way:

> Grupo Simec informed Commerce of its challenges early on and, while the extension letters *made minor updates* to the effects of COVID-19 on the respondent, these were essentially the same reasons that were provided early on in the proceeding and had been considered by Commerce.  As such, Grupo Simec's argument that Commerce failed to consider the whole picture [is] inaccurate.  Commerce was well aware of Grupo Simec's situation, particularly as *none of the reasons for extension requests to the supplemental questionnaire were novel*.

IDM at 9–10, J.A. at 7,721–22, ECF No. 68 (emphases added).  Letters announcing additional deaths are not "minor updates."    And Commerce forthrightly acknowledged at oral argument that Simec experienced more COVID difficulties than any other pandemic-era respondent.  Oral Arg. Tr. at 29:16–19, ECF No. 71 (The Court: "[A]re you aware of any other administrative review engaged in during this time period in which multiple key employees died during the administrative review?" Ms. Westercamp: "I am not, Your Honor.").  The closest Commerce's memorandum comes to acknowledging Simec's death toll is its statement, "[W]e … appreciated the burden that Grupo Simec has previously expressed it was experiencing due to the effects of COVID-19, including the loss of staff …."  IDM at 12, J.A. at 7,724, ECF No. 68.  Read in the context of the remainder of the decision, a disinterested reader would

Case 1:22-cv-00202-SAV    Document 72    Filed 04/25/24    Page 35 of 37

Consol. Court No. 1:22-cv-00202-SAV                                    Page 35

likely surmise that Simec experienced normal workforce attrition, not three deaths and a hospitalization. *See id.* (nowhere noting the hospitalization, the number of employees "los[t]," the inability of outside counsel to travel to the location, *etc.*).

This is not merely a memorandum decision's being "anodyne or perhaps antiseptic." Oral Arg. Tr. at 31:14–16, ECF No. 71 (Government counsel's characterization). This is an agency decision that failed to link the facts found to the choice made. Many "novel" events occurred. It was Commerce's job to acknowledge that and explain how it took those sad novelties into account in making its decision to reject Simec's request for further time. Because Commerce failed to engage with record evidence that detracts from its conclusion, its decision to deny Simec's extension request is also unsupported by substantial evidence. *See* 19 U.S.C. § 1516a(b)(1)(B)(i) (requiring determinations without substantial evidentiary support to be set aside).

## CONCLUSION

Commerce is granted broad authority to set and administer deadlines to ensure it can issue results on a timely basis. Its discretion is not unlimited, however. *Cf. Grobest*, 36 CIT at 123 (describing a court's analysis of whether Commerce's rejection of an untimely filing is an abuse of discretion as "necessarily case specific"). Despite its claim that Simec was unreasonably slow, Commerce gave Simec five fewer days than Deacero received to respond to 175 more supplemental questions than Deacero answered.[7] Simec submitted answers for all but six questions despite facing

---

[7] Simec received its A–C Supplemental Questionnaire on July 28, 2021, and submitted its A&D Supplemental Questionnaire responses on September 10, 2021, for a total of 45 calendar

unprecedented hardships because of COVID-19's toll in Mexico.  Commerce failed to

acknowledge the compounding difficulties Simec faced, and it cut Simec's opportunity

to provide evidence short while allowing Deacero the opportunity to answer questions

for an additional two months.  Because Commerce abused its discretion in denying

Simec's extension request and its analysis is unsupported by substantial evidence,

the Court **GRANTS** Plaintiffs' Motions for Judgment on the Agency Record.  It is

further:

    **ORDERED** that Commerce shall reopen the record and accept the information

Simec proffered on October 18, 2021.  Commerce, in its discretion, may request any

other information it may need after reviewing the October 18 data;

    **ORDERED** that Commerce shall conduct a new analysis to determine if facts

available or adverse inferences are warranted;

---

days working on supplemental questionnaires.  Simec A–C Questionnaire, J.A. at 4,873, ECF No. 68; Simec A&D Questionnaire Resp. (Sept. 10, 2021) at 1, J.A. at 86,713, ECF No. 66.

Deacero received its First Supplemental Questionnaire on September 7, 2021, and submitted responses on September 20, 2021.  *See* Deacero First Suppl. Questionnaire, J.A. at 4,962, ECF No. 68; Deacero First Suppl. Questionnaire Resp. (Sept. 20, 2021), J.A. at 6,515, ECF No. 68.  Deacero received its Second Supplemental Questionnaire on September 22, 2021, and submitted the last of its responses on October 19, 2021.  *See* Deacero Second Suppl. Questionnaire, J.A. at 6,589, ECF No. 68; Deacero Second Suppl. Questionnaire Resp. (Oct. 19, 2021), J.A. at 6,629, ECF No. 68.  Deacero received its Third Supplemental Questionnaire on November 3, 2021, and submitted responses on November 10, 2021.  *See* Deacero Third Suppl. Questionnaire, J.A. at 7,120, ECF No. 68; Deacero Third Suppl. Questionnaire Resp. (Nov. 10, 2021), J.A. at 7,162, ECF No. 68.  Thus, Deacero spent fourteen, twenty-eight, and eight days responding to three questionnaires — totaling fifty calendar days working on its supplemental questionnaires.

In examining the respective supplemental questionnaire periods, the Court used the timestamped file date and included both the date a questionnaire was sent and the date the company filed responses as working days.

**ORDERED** that Commerce shall reanalyze the non-selected company rate and make any needed adjustments; and it is further

**ORDERED** that Commerce shall file its Remand Determination with the Court within 120 days of today's date;

**ORDERED** that all Plaintiffs shall have 30 days from the filing of the Remand Determination to submit comments to the Court;

**ORDERED** that Defendant shall have 30 days from the date of Plaintiffs' filing of comments to submit a response;

**ORDERED** that Defendant-Intervenor shall have 15 days from the date of Defendant's filing of comments to submit its response; and

**ORDERED** that all Plaintiffs shall have 15 days from the date of Defendant-Intervenor's filing to submit any reply.

**SO ORDERED.**

Stephen Alexander Vaden, Judge

Dated:  April 25, 2024
          New York, New York