Slip Op. No. 25-21

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GRUPO ACERERO S.A. de C.V., GRUPO SIMEC S.A.B. de C.V., *et al.*,<br><br>*Plaintiffs,*<br><br>and<br><br>GERDAU CORSA, S.A.P.I de C.V.,<br><br>*Plaintiff-Intervenor,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>and<br><br>REBAR TRADE ACTION COALITION,<br><br>*Defendant-Intervenor.* | Before: Stephen Alexander Vaden, Judge<br><br>Consol. Court No. 1:22-cv-00202 (SAV) |

## OPINION

[Sustaining Commerce's Remand Determination.]

Dated: February 28, 2025

*James L. Rogers, Jr.*, Nelson, Mullins, Riley & Scarborough LLP, of Greenville, SC, for Plaintiff Grupo Simec S.A.B. de C.V.

*Irene H. Chen*, VCL Law LLP, of Vienna, VA, for Consolidated Plaintiff Grupo Acerero S.A. de C.V.

*Craig A. Lewis*, Hogan Lovells US LLP, of Washington, DC, for Plaintiff-Intervenor Gerdau Corsa, S.A.P.I de C.V. With him on the briefs were *Jonathan T. Stoel* and *Nicholas R. Sparks*.

Case 1:22-cv-00202-SAV    Document 85    Filed 02/28/25    Page 2 of 13

Consol. Court No. 1:22-cv-00202-(SAV)                                                                 Page 2

*Kara M. Westercamp*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *L. Misha Preheim*, Assistant Director, Commercial Litigation Branch, and *Ruslan Klafehn*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*John R. Shane*, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor Rebar Trade Action Coalition. With him on the brief were *Alan H. Price*, and *Maureen E. Thorson*.

**Vaden, Judge:** This case concerns the remand determination of an antidumping review conducted during the 2019 coronavirus pandemic. During the original investigation, Grupo Simec S.A.B. de C.V. (Grupo Simec) sought a deadline extension on its supplemental questionnaire to submit information related to its downstream sales. Despite the difficulties stemming from the pandemic, the United States Department of Commerce (Commerce) denied Grupo Simec's request. The resultant missing information led Commerce to draw an adverse inference using facts available to calculate Grupo Simec's dumping margin, which in turn impacted the rate for the companies not selected for review.

In the Court's previous opinion, the Court remanded to Commerce to (1) reopen the record and accept Grupo Simec's filing; (2) conduct a new analysis on whether use of an adverse inference is warranted; and (3) reanalyze the non-selected company rate Commerce used in its final determination. Because Commerce complied with the Court's Remand Order and no party objects to Commerce's Remand Determination, the Court **SUSTAINS** the Remand Determination.

Case 1:22-cv-00202-SAV   Document 85   Filed 02/28/25   Page 3 of 13

Consol. Court No. 1:22-cv-00202-(SAV) Page 3

## BACKGROUND

The Court presumes familiarity with the facts of this case as set out in its previous opinion and now recounts those facts relevant to the review of the Remand Determination. *See Grupo Acerero S.A. de C.V. v. United States*, 48 CIT __, 698 F. Supp. 3d 1320, 1322–1331 (2024).

### I. Original Determination

On November 6, 2014, Commerce issued an antidumping duty order on concrete reinforcing bar from Mexico. *Steel Concrete Reinforcing Bar from Mexico: Antidumping Duty Order,* 79 Fed. Reg. 65,925 (Dep't of Com. Nov. 6, 2014). Commerce began its annual review of the order on January 6, 2021. *See Initiation of Antidumping Duty and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 511, 513 (Dep't of Com. Jan. 6, 2021). Commerce selected Grupo Simec and Deacero S.A.P.I. de C.V. (Deacero) as mandatory respondents. *See Steel Concrete Reinforcing Bar from Mexico: Preliminary Results of Antidumping Duty Administrative Review; 2019-2020* (Preliminary Results), 86 Fed Reg. 68,632, 68,633 (Dep't of Com. Dec. 3, 2021). Sidertul S.A. de C.V. (Sidertul)[1] and Grupo Acerero S.A. de C.V. (Grupo Acerero) remained subject to the review as non-selected companies. *Id.*

Commerce's treatment of Grupo Simec throughout the investigation was arbitrary. It "failed to appreciate the severe disruptions COVID-19 caused in Simec's ability to respond …" to Commerce's inquiries. *Grupo Acerero*, 48 CIT __, 698 F. Supp.

---

[1] Plaintiff-Intervenor Gerdau Corsa S.A.P.I. de C.V. is the successor-in-interest to Sidertul as of December 1, 2021. Joint Mot. of Grupo Acerero and Gerdau Corsa at 1 n.1, ECF No. 44. Sidertul participated in the administrative review as a foreign producer but was not selected for individual examination. *Id.*

3d at 1332. These disruptions included the deaths of three key employees from COVID-19 and the hospitalization of a fourth. Pls.' Br. at 5, ECF No. 43; Grupo Simec Third A&D Questionnaire Extension Req. (Aug. 16, 2021), J.A. at 4,914, ECF No. 68. Despite these calamities, Grupo Simec sought to complete its questionnaires by hiring outside counsel. Grupo Simec Second A&D Questionnaire Extension Req. (Aug. 16, 2021) at 2, J.A. at 4,911, ECF No. 68. Outside counsel could not aid Grupo Simec, however, because COVID-19 restrictions in Mexico and India prevented him from travelling to Simec's Mexican facilities. *Id.* These compounding complications made completing Commerce's extensive questionnaires almost impossible for Grupo Simec. Commerce was aware that Grupo Simec's situation was unlike any other COVID-era respondent. *See* Oral Arg. Tr. at 29:16–19, ECF No. 71 (The Court: "[A]re you aware of any other administrative review engaged in during this time period in which multiple key employees died during the administrative review?" Ms. Westercamp: "I am not, Your Honor."). Regardless, Commerce granted little grace.

Grupo Simec's fellow mandatory respondent had things much better. Deacero did not experience any deaths or hospitalizations of key personnel. When it asked for extensions to answer its questionnaires, Deacero's requests focused on more general problems regarding COVID-19 restrictions in Mexico — the types of inconveniences that would affect any respondent in the COVID era. *See, e.g.*, Deacero Second Suppl. Questionnaire Extension Req. (Oct. 13, 2021) at 1–3, J.A. at 6,614–16, ECF No. 68. Some of Deacero's extension requests did not mention COVID-19 at all. *See, e.g., id.* Nonetheless, "Commerce gave Simec five fewer days than Deacero received to

respond to 175 more supplemental questions than Deacero answered." *Grupo Acerero*, 48 CIT __, 698 F. Supp. 3d at 1338.

Relevant to the Remand Determination, Grupo Simec asked for an extension to complete a questionnaire on September 6, 2021. Extension Request for Downstream Sales Data (Sept. 6, 2021), J.A. at 4,954–55, ECF No. 68. Despite Grupo Simec's travails, Commerce denied the extension request and effectively ended Grupo Simec's ability to submit information to the agency. Denial of Extension (Sept. 7, 2021), J.A. at 4,958, ECF No. 68. On October 18, 2021, Grupo Simec attempted to submit what it labeled "Additional Factual Information" to Commerce, consisting of its downstream sales data as well as some translations "inadvertently stripped by computer operation from the documents in the Commerce ACCESS filing process." Submission of Additional Information at 2 (Oct. 18, 2021), J.A. at 6,625–28, ECF No. 68. Because Commerce originally requested this information in the supplemental questionnaire due on September 7, 2021, Commerce rejected the submission as untimely. Rejection of Untimely Filed Information (Oct. 19, 2021), J.A. at 7,108, ECF No. 68.

On December 3, 2021, Commerce issued its Preliminary Results. Preliminary Results, 86 Fed Reg. 68,632; Preliminary Decision Memorandum (PDM), J.A. at 7,218, ECF No. 68. It found "deficiencies [that] covered all aspects of Grupo Simec's responses[.]" PDM at 4, J.A. at 7,221, ECF No. 68. Grupo Simec's supplemental questionnaire responses "continued to fail to provide information Commerce requested." Pervasive errors remained in Grupo Simec's home market sales, U.S.

sales, and downstream sales data. *Id.* at 5. Commerce concluded that "it d[id] not have any sales-related information that can be used as a basis for conducting a dumping analysis," prompting it to draw an adverse inference using facts otherwise available. *Id.* at 7. It assigned a preliminary 66.70 percent dumping margin to Grupo Simec. *Id.* at 9. In its Final Results, Commerce maintained substantially the same position and continued to assess a 66.70 percent dumping margin. *See Steel Concrete Reinforcing Bar from Mexico: Final Results of Antidumping Duty Administrative Review; 2019–2020*, 87 Fed. Reg. 34,848, 34,850 (Dep't of Com. June 8, 2022) (Final Results). Commerce also set a 33.35 percent dumping margin for the non-selected company rate. *Id.*

On August 8, 2022, Grupo Simec filed suit in this Court. Compl., ECF No. 8. It challenged Commerce's drawing an adverse inference using facts available in the Final Results. *See id.* ¶¶ 35–52; *see also* Pls.' Mot. for J. on the Agency R. at 18–40, ECF No. 43. The Court held oral argument on December 15, 2023. ECF No. 64. Grupo Simec's counsel represented to the Court that the documents Grupo Simec sought to file on October 18 were the same as those it would have filed if Commerce granted its September 6 extension request. Oral Arg Tr. at 19:20–25, ECF No. 71 (The Court: "[D]o I hear you representing to the Court that essentially what you did on October 18th was attempt to give [Commerce] … the same thing that they would have received in the first ten days of September had they given you a couple of additional days?" Mr. Rogers: "Yes, Your Honor."). All parties agreed that, should the Court remand on the issue of Commerce's failure to grant an extension of time to

Case 1:22-cv-00202-SAV    Document 85    Filed 02/28/25    Page 7 of 13

Consol. Court No. 1:22-cv-00202-(SAV)                                                    Page 7

Grupo Simec, it should stay any consideration of the non-selected company rate until after remand. *Id.* at 83:12–19, 94:2–7, 98:13–20. Any change in Grupo Simec's rate would necessarily affect the non-selected company rate. *Id.* at 94:7–11 (Government counsel noting that a change in Simec's rate would "necessarily flow [and affect] the non-selected rate …."); *id.* at 98:20–22 (Coalition's counsel agreeing that, if the case were remanded, the non-selected company rate issue "could go away depending on what happens on remand.").

## II.    Remand

This Court agreed with the Plaintiffs' objections and remanded Commerce's Final Results. *Grupo Acerero*, 48 CIT __, 698 F. Supp. 3d at 1338–39. Commerce had "failed to appreciate the severe disruptions COVID-19 caused in [Grupo Simec's] ability to respond[,]" and its "drawing of adverse inferences[] and use of a simple average to determine the non-examined company rate all flow[ed] from Commerce's unjustified decision to reject [Grupo Simec's] final extension request." *Id.* at 1332. To rectify this abuse of discretion, the Court ordered Commerce to perform three tasks on remand: (1) accept the information Grupo Simec proffered on October 18, 2021, and request other information as needed; (2) conduct a new analysis to determine if the use of facts available or the drawing of an adverse inference is warranted; and (3) reanalyze the non-selected company rate and make any needed adjustments. *Id.* at 1338.

On remand, Commerce allowed Grupo Simec to submit its October 18, 2021 filing, sought additional information, and found "that there are no gaps in the record

… such that the application of [adverse facts available] would be warranted." Remand Determination at 2, ECF No. 77. Grupo Simec's submission filled-in the missing information, which "ma[de] it inappropriate for Commerce [to] apply [an adverse inference]." *Id.* at 27. Consequently, Commerce reduced the dumping margin for Grupo Simec from 66.70 percent to zero percent. *Compare* Final Results, 87 Fed. Reg. at 34,850, *with* Remand Determination at 28, ECF No. 77. The dramatic drop in Grupo Simec's dumping margin had a similar effect on the rates applicable to non-selected companies. The non-selected company rate declined from 33.35 percent in the original review to zero percent after remand. *Compare* Final Results, 87 Fed. Reg. at 34,850, *with* Remand Determination at 28, ECF No. 77.

On November 21, 2024, Commerce filed the Remand Determination with the Court. Remand Determination, ECF No. 77. Plaintiffs support the Remand Determination "without qualification." Pls.' Joint Comments on Commerce's Final Results of Redetermination Pursuant to Court Remand (Pls.' Comments) at 2, ECF No. 79. Commerce agrees with Plaintiffs, stating that its "remand redetermination … complies with the remand opinion and is supported by substantial evidence and otherwise in accordance with law." Def.'s Resp. to Pls.' and Pl.-Intervenor's Joint Comments on the Remand Redetermination (Def.'s Resp.) at 2, ECF No. 80. Although the Defendant-Intervenor disagrees with the Remand Determination, it "has determined not to file papers in opposition or further challenge the remand results." Pls.' Comments at 2, ECF No. 79. In other words, the Remand Determination returns to the Court uncontested. *See id.*

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction under 28 U.S.C. § 1581, which grants authority to review challenges to antidumping order final determinations. The Court must set aside any of Commerce's "determination[s], finding[s], or conclusion[s]" found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law …." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also* 28 U.S.C. § 2640(b) (noting that § 516A civil actions are reviewed under 19 U.S.C. § 1516a(b)). "[T]he question is not whether the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce's conclusion." *New Am. Keg v. United States*, No. 1:20-cv-00008, 45 CIT __, 2021 Ct. Intl. Trade LEXIS 34, at *15 (March 23, 2021). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (citations omitted). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). Additionally, "The court reviews remand determinations for compliance with the court's [remand] order." *Bonney Forge Corp. v. United States*, No. 1:20-cv-03837, 47 CIT __, 2023 Ct. Intl. Trade LEXIS 125, at *7 (Aug. 21, 2023) (quoting *Nakornthai Strip Mill Pub. Co. Ltd. v. United States*, 32 CIT 1272, 1274 (2008)).

## DISCUSSION

The Court ordered Commerce to: (1) reopen the record and accept Grupo Simec's October 18, 2021 filing; (2) conduct a new analysis to determine if adverse

inferences are warranted; and (3) reanalyze the non-selected company rate and make any needed adjustments. Commerce did so; and for the reasons below, the Court **SUSTAINS** Commerce's Remand Determination.

Commerce complied with the Remand Order's instruction to reopen the record. It "requested Grupo Simec to file: (1) the October 18, 2021, submission; (2) revised supplemental questionnaire responses to the Section A-C and Sections A&D supplemental questionnaires; and (3) any other information that Grupo Simec believed would cure deficiencies in their reporting during the administrative review." Remand Determination at 23, ECF No. 77. Grupo Simec submitted all the requested documents, and Commerce used the information to reexamine both its original adverse inference determination and the non-selected company rate. *Id.* at 27–28.

## I. Adverse Inferences

After Commerce reopened the record and sought new information, it concluded that resorting to facts available with an adverse inference was not warranted. When foreign merchandise is sold in the United States at less than its fair value — thereby injuring a domestic industry — the law allows Commerce to impose antidumping duties on the merchandise. Antidumping duties equal the amount by which the foreign market value, known as the "normal value," of the merchandise exceeds the U.S. price of the merchandise. 19 U.S.C. § 1677b(a). This difference is called the dumping margin. 19 U.S.C. § 1677(35)(A). When Commerce is missing data necessary to calculate the dumping margin, the antidumping statute provides a two-

part process to fill the gap. *See* 19 U.S.C. § 1677e(a). The statute enables Commerce to use "facts otherwise available" in place of the missing information if:

> (1) Necessary information is not available on the record, or
> (2) An interested party or any other person —
>    (A) Withholds information that has been requested by [Commerce],
>    (B) Fails to provide such information by the deadlines for submission of the information or in the form and manner requested, . . .
>    (C) Significantly impedes a proceeding under this subtitle, or
>    (D) Provides such information but the information cannot be verified[.]

19 U.S.C. § 1677e(a).

Separately, 19 U.S.C. § 1677e(b) permits those facts otherwise available to be chosen with an adverse inference if "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from [Commerce]." Although § 1677e(a) and § 1677e(b) are often collapsed into "adverse facts available" or "AFA," the two statutory processes require distinct analyses rather than the single analysis implied by the term "AFA." Commerce first must determine that it is missing necessary information; and, if it wishes to fill the resulting gap with facts that reflect an adverse inference against an interested party, Commerce must secondarily determine that the party has failed to cooperate by not acting to the best of its ability. *See Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1346 (Fed. Cir. 2011). The purpose of these statutory provisions is "to provide respondents with an incentive to cooperate." *F. Lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2010).

Originally, Commerce applied an adverse inference because it rejected Grupo Simec's October 18 filing, leaving a gap in the record. *See* Issues and Decision

Memorandum at 24, J.A. at 7,736, ECF No. 68 ("[W]ithout a complete record, Commerce is unable to make adjustments to Grupo Simec's responses[.]"). On remand, Commerce accepted the October 18 filing and sent supplemental questionnaires to address any remaining deficiencies in the record. *See* Remand Determination at 23, ECF No. 77. Commerce found that Grupo Simec's "submissions placed on the record of this remand proceeding ... addressed previous gaps in the record ...." *Id.* at 27. Because there was no longer any gap, Commerce correctly determined that it would be "inappropriate for Commerce [to] apply [adverse inferences.]" *Id.*; *see* 19 U.S.C. § 1677e(a) (requiring there to be missing information from the record as a prerequisite to drawing an adverse inference). Therefore, Commerce complied with the Remand Order when it reopened the record, analyzed the newly submitted data, and determined that new data filled all remaining gaps in the record. *See Grupo Acerero*, 48 CIT __, 698 F. Supp. 3d at 1338–39.

## II. Non-Selected Company Rate

Commerce's recalculation of the non-selected company rate also complied with the Remand Order. Under 19 U.S.C. § 1673d(c)(5)(B), if the weighted-average dumping margins for investigated exporters are zero or de minimis, Commerce "may use any reasonable method to establish the estimated all-others rate ...." As noted at oral argument, any change in Grupo Simec's rate will necessarily affect the non-selected company rate. Oral Arg. Tr. at 94:7–11, ECF No. 71. Consequently, this Court instructed Commerce to reanalyze the non-selected company rate and make any needed adjustments. *Grupo Acerero*, 48 CIT __, 698 F. Supp. 3d at 1338.

On remand, Commerce reanalyzed the rates for Grupo Acerero and Sidertul — the non-selected companies — "because the rate for non-selected companies was based, in part, on Grupo Simec's weighted-average dumping margin." Remand Determination at 2, ECF No. 77. Commerce noted that, "because of the change in Grupo Simec's calculated margin, the non-selected companies' rate has also changed [so that] each [is] assigned a weighted-average dumping margin of 0.00 percent in accordance with [19 U.S.C. § 1673d(c)(5)(B)]." *Id.* at 28. By recalculating the non-selected company rate after modifying Grupo Simec's dumping margin, Commerce complied with the Remand Order. *See Grupo Acerero*, 48 CIT __, 698 F. Supp. 3d at 1338–39. No party objects to the new calculation. *See* Pls.' Comments at 2, ECF No. 79; Def.'s Resp. at 2, ECF No. 80.

## CONCLUSION

When reviewing a remand determination, the Court looks for compliance with both the law and the remand order. Here, Commerce complied with both; and substantial evidence supports its Determination. As no party objects, the Court **SUSTAINS** Commerce's uncontested Remand Determination.

**SO ORDERED.**

/s/ Stephen Alexander Vaden
Stephen Alexander Vaden, Judge

Dated: February 28, 2025
New York, New York